IN RE BRAYDEN JAMES.

[Cite as *In re Brayden James,* 113 Ohio St.3d 420, 2007-Ohio-2335.]

(No. 2005–1994—Submitted September 19, 2006—Decided May 30, 2007.)

O'DONNELL, J.

{¶ 1} Cynthia and Rick Hutchinson, the maternal grandparents of Brayden James, appeal from a decision of the First District Court of Appeals, which affirmed an order of the juvenile court modifying a prior custody decree

removing them as legal custodians of Brayden and awarding custody of him to his biological parents—their daughter, Jamie, and her husband, Damon James.

{¶ 2} The appellate court found R.C. 3109.04(E)(1)(a) unconstitutional as applied to Jamie and Damon James, declaring that it deprived them of their fundamental right to parent their child, Brayden. After careful review of this case, we have concluded that R.C. 3109.04(E)(1)(a) provides stability with respect to judicial decisions involving custody of children, does not deprive parents of fundamental rights, and is constitutional as applied in this case. Therefore, we reverse the decision of the appellate court and remand this matter for further consideration.

{¶ 3} The record reveals that in October 1999, Jamie took six-month-old Brayden to the Cincinnati Children's Hospital for treatment of bruises he had on his forehead and back, but she did not explain at that time how he received these injuries. On November 19, 1999, the mother again took Brayden to the hospital, this time for injuries that included broken ribs and bruises on his face and leg. Although she again failed to explain how these injuries occurred, the mother did report that she and Brayden were staying with her parents, Cynthia and Rick Hutchinson, because her husband, Damon, had committed acts of domestic violence.

{¶ 4} The Hamilton County Department of Human Services ("department") subsequently filed both a complaint in the juvenile court alleging that Brayden was abused, neglected, and dependent, and a motion seeking temporary custody of the child pending a hearing on the complaint. Following a hearing on the temporary-custody motion, the court awarded custody to the department, appointed Cynthia Hutchinson as the child's physical custodian, and scheduled the complaint for further hearing. The department initiated a case plan for Jamie and Damon and referred them to a variety of services including counseling, parenting classes, and anger-management classes.

{¶ 5} On June 29, 2000, the court conducted a hearing on the abuse, neglect, and dependency complaint filed by the department, with Brayden's parents and maternal grandparents present. The parties stipulated to the allegations in the complaint and further agreed that the award of temporary custody to the department, with Brayden's continued placement at his grandparents' home, would be in his best interest. Consequently, the court found that Brayden was abused and dependent and committed him to the temporary custody of the department with continued placement with his grandparents. Following that hearing, the department further developed its case plan for Jamie and Damon, and they participated in therapy, counseling, and parenting classes.

{¶ 6} On May 31, 2001, at the annual review of the case plan, the department asked the juvenile court to award legal custody of Brayden to his grandparents,

Cynthia and Rick Hutchinson. Jamie and Damon stipulated to that request, and the court found that awarding legal custody to the grandparents would be in the best interest of the child and entered an order to that effect. It also established a supervised-visitation schedule allowing Jamie and Damon to visit with Brayden.

{¶ 7} Almost three years later, on February 6, 2004, Jamie and Damon filed a motion to obtain custody of Brayden. The juvenile court held a hearing, during which Brayden's parents and maternal grandparents testified, as well as experts and a court-appointed investigator who had observed Brayden interacting with both his parents and grandparents. Thereafter, the court journalized an order restoring Brayden to the custody of his parents. The grandparents appealed that decision.

{¶ 8} The First District Court of Appeals affirmed the judgment of the juvenile court transferring custody of Brayden from his grandparents to his parents and held that "when a nonparent has nonpermanent custody of a child, the requirement in R.C. 3109.04(E)(1)(a) that the child's parent must demonstrate a change in circumstances for either the child or the nonparent in order for the court to modify custody is unconstitutional." In re James, 163 Ohio App.3d 442, 2005-Ohio-4847, 839 N.E.2d 39, ¶ 19. The court recognized the parents' fundamental right to raise their child and ruled that "when a parent petitions for custody of his or her child from a nonparent, a court must consider only what is in the best interest of the child." Id.

{¶ 9} We accepted a discretionary appeal to review the constitutionality of R.C. 3109.04(E)(1)(a) as applied in this case and, specifically, to consider whether a trial court, when modifying a prior decree allocating parental rights and responsibilities for the care of children, should consider only whether the modification is necessary to serve the best interest of the child, or whether the trial court has an obligation to adhere to the conjunctive statutory requirements to find both a change in the circumstances of the child, the residential parent, or either of the parents subject to a shared-parenting decree, and that the modification is necessary to serve the best interest of the child.

{¶ 10} Cynthia and Rick Hutchinson claim that the statutory "change in circumstances" requirement conforms with the Ohio Constitution because the juvenile court had adjudicated Brayden to be abused and dependent and also because Damon and Jamie stipulated to the court order that granted them legal custody of Brayden. They also claim that the appellate court misread In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, when it concluded that R.C. 3109.04(E)(1)(e) violates fundamental parental rights.

{¶ 11} Relying on In re Hockstok, Jamie and Damon claim they should be able to regain custody of their child by demonstrating only that it would be in the best interest of the child and that the "change in circumstances" requirement of R.C.

3109.04(E)(1)(a) imposes an unconstitutional burden on them, denying them their fundamental parental rights.

{¶ 12} We begin our review of the law in this case by examining R.C. 3109.04(E)(1)(a), which provides, "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."

{¶ 13} We have previously stated, in *State v. Collier* (1991), 62 Ohio St.3d 267, 581 N.E.2d 552, that "all legislative enactments must be afforded a strong presumption of constitutionality." Id., citing *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224, *State v. Klinck* (1989), 44 Ohio St.3d 108, 541 N.E.2d 590, and *State v. Tanner* (1984), 15 Ohio St.3d 1, 15 OBR 1, 472 N.E.2d 689. Further, in reviewing a statute, we are obligated "to give effect to the words used and not to insert words not used." *State ex rel. Richard v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 412, 632 N.E.2d 1292, citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319.

{¶ 14} The plain language of R.C. 3109.04(E)(1)(a) precludes a trial court from modifying a prior decree allocating parental rights and responsibilities unless it finds, based on facts that have arisen since the time of the decree or were unknown to it at that time, not only that a change has occurred in circumstances of the child, the child's residential parent, or either parent subject to a shared-parenting decree, but also that the modification of the prior custody decree is necessary to serve the best interest of the child.

{¶ 15} In *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159, we reviewed R.C. 3109.04(E)(1)(a) and determined that it is designed to provide stability in the life of a child. There, we stated, " 'The clear intent of that statute is to spare children from a constant tug of war * * *. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.' " Id. at 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153.

{¶ 16} We also acknowledge that the Constitutions of both the United States and the state of Ohio afford parents a fundamental right to custody of their children. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; and *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169.

{¶ 17} Upon review, however, R.C. 3109.04(E)(1)(a) does not violate the fundamental rights of parents either on its face or as applied in this case. Here, the juvenile court adjudicated Brayden as abused and dependent, and Jamie and Damon voluntarily relinquished custody of him to his grandparents. In addition, Cynthia and Rick Hutchinson have raised Brayden in a stable home environment, and we are not unmindful that Jamie and Damon enjoy residual parental rights, privileges, and responsibilities as set forth in R.C. 2151.011(B)(19) and (46).

{¶ 18} In this case, the record does not establish a change in Brayden's circumstances, but that failure does not prevent Jamie and Damon from ever regaining custody of him. At a future time, by evidencing a sufficient change in the child's circumstances to the court, his parents may be able to regain his custody. Ohio courts have considered a variety of factors that are relevant to the change-in-circumstances requirement of R.C. 3109.04(E)(1)(a). For example, relevant factors presented in other cases have included "a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation," *Davis*, 77 Ohio St.3d at 419, 674 N.E.2d 1159; the advancement of a child from infancy to adolescence, *Perz v. Perz* (1993), 85 Ohio App.3d 374, 377, 619 N.E.2d 1094; unruly behavior of the residential parent involving the police, *Butler v. Butler* (1995), 107 Ohio App.3d 633, 669 N.E.2d 291; and fights between the residential parent and a new spouse that required police intervention, along with the fact that the residential parent had moved six times in two years, *Dedic v. Dedic* (Jan. 27, 1999), Wayne App. No. 98CA0008, 1999 WL 33445.

{¶ 19} Thus, R.C. 3109.04(E)(1)(a) imposes restrictions on the exercise of judicial authority and requires that, before a trial court modifies an existing order of custody, it is not only required to find, based on facts that have arisen since the prior decree or that were unknown to it at that time, that a change has occurred in the circumstances of the child, the child's residential parent, or either parent subject to a shared-parenting decree, but also that the modification is necessary to serve the best interest of the child.

{¶ 20} Further, the provisions of R.C. 3109.04(E)(1)(a) promote stability in the development of children and are not unconstitutional as applied when a noncustodial parent has not evidenced that a change has occurred in circumstances.

{¶ 21} We distinguish *In re Hockstok* from this case. There, the issue concerned whether, in a child-custody case, a trial court must make a parental-unsuitability determination on the record before awarding legal custody of a child to a nonparent. We held that "in custody cases between a natural parent and nonparent, a parental unsuitability determination must be made and appear in the record before custody can be awarded to a nonparent." 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, at ¶ 36. We also recognized that a determina-

tion of unsuitability depends on whether the record supports a finding that the natural parent has relinquished his or her custodial rights. Id. at ¶ 33, citing *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, and *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857.

{¶ 22} Similarly, we distinguish *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, a case that concerned only "[w]hether, before awarding legal custody to a nonparent, a trial court must first find the noncustodial parent unsuitable when a child has been determined to be abused, neglected or dependent." Id. at ¶ 1. In that case, we noted that a grant of legal custody does not terminate residual parental rights, and we held that a juvenile court adjudication of abuse, dependency, or neglect "is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." Id. at ¶ 23.

{¶ 23} By way of contrast, in the instant case, no similar issue regarding unsuitability arises in connection with the order of the juvenile court awarding legal custody of Brayden to his grandparents because he previously had been adjudicated abused and dependent and because Jamie and Damon had voluntarily relinquished custody of him. See *In re Perales* and *Masitto*, supra.

{¶ 24} We acknowledge the view of the dissenting members of the court, who assert that R.C. 3109.04(E)(1)(a) has no application here. We have used R.C. 3109.04(E)(1)(a) because the constitutional challenge before us arose from that statute and from the appellate court's analysis and conclusion.

{¶ 25} Both dissenting opinions recognize that the matter arose from a decision of the juvenile court, but neither has acknowledged R.C. 2151.23(F)(1), which states, "The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04, 3127.01 to 3127.53, and 5103.20 to 5103.22 of the Revised Code."

{¶ 26} Finally, with respect to the views of the dissenters, we note that R.C. 2151.42, styled "Consideration of whether return to parents is in best interest of child; certain orders granting legal custody intended to be permanent," also addresses juvenile custody cases. That statute is more compelling on the issue of permanency than is R.C. 3109.04(E)(1), and it places similar requirements upon a court considering whether to modify a prior order of legal custody. R.C. 2151.42(B) states, "An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person *is intended to be permanent in nature.* A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that

modification or termination of the order is necessary to serve the best interest of the child." (Emphasis added.) The italicized portion of this statute does not appear in R.C. 3109.04(E)(1), but the analysis under either statute would be similar.

{¶ 27} In addition, neither dissenting opinion recognizes that the juvenile court declared this child to be abused and dependent, which this court has stated is a determination of the unsuitability of the parents. See *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 22.

{¶ 28} The General Assembly is the policy-making body in our state and has restricted the exercise of judicial authority with respect to modification of a prior decree allocating parental rights and responsibilities. This legislation comports with our rationale regarding stability in the lives of children as a desirable component of their emotional and physical development. For example, we stated in *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055, that children should not be deprived "of the stability and security which they need to become productive and well-adjusted members of the adult community."

{¶ 29} If the General Assembly chooses to provide different requirements for the exercise of judicial authority with respect to the modification of prior custody orders, it may do so. Until it does, however, a trial court is required to follow the mandate of R.C. 3109.04(E)(1)(a) and may not modify a prior decree allocating parental rights and responsibilities unless it finds, based on facts that have arisen since the prior decree or that were unknown to it at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared-parenting decree, and that the modification is necessary to serve the best interest of the child.

{¶ 30} Accordingly, we are constrained to reverse the judgment of the court of appeals and remand the matter for further consideration in accordance with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., concur.

WOLFF, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

WILLIAM H. WOLFF, J., of the Second Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

**PFEIFER, J., dissenting.**

{¶ 31} R.C. 3109.04(E) does not apply to the case before us. This case does not involve an allocation of parental rights, the subject of the entirety of R.C. 3109.04; rather, it involves a custody dispute between a minor child's parents and his maternal grandparents.

{¶ 32} Even a cursory reading of R.C. 3109.04 reveals that its overarching goal is to guide judges in determining how to allocate rights, custodial or otherwise, between parents. The term "legal custodian" is used several times in R.C. 3109.04, but only once does it refer to a person other than a parent. See R.C. 3109.04(D)(2). The vast majority of all references to adult persons in R.C. 3109.04 speak only of "parents." Even R.C. 3109.04(E), which the majority opinion uses to prevent Jamie and Damon James from taking custody of their child, speaks only of parents, not of custodians, not of relatives, not of agencies, not of guardians, but solely of parents. Nothing in R.C. 3109.04 suggests that it applies to custody cases involving persons other than parents.

{¶ 33} In an attempt to overcome this *omission* by the General Assembly, the majority opinion quotes *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153, " ' "The clear intent of [R.C. 3109.04(E)(1) ] is to spare children from a constant tug of war * * *. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." ' " Majority opinion at ¶ 15. This quote speaks only of parents, which should not be surprising, because R.C. 3109.04 speaks only of allocating *parental* rights. Whether this quote provides the support the majority seeks is questionable; what is undeniable is that the full quote, without the ellipsis, provides even less support. The sentence with the ellipsis, with the portion that was omitted by the majority in italics, states, " 'The clear intent of [R.C. 3109.04(E)(1) ] is to spare children from a constant tug of war *between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment.*' " Id. The reason *Davis* says "constant tug of war between their parents" is because that is the only type of custody dispute relevant to R.C. 3109.04.

{¶ 34} Unfortunately, this court has once again decided to pay lip service to parents' constitutional right to raise their own children. See *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188 (Pfeifer, J., dissenting). The majority opinion acknowledges that such a right exists, but then goes out of its way to undermine that right.

{¶ 35} That Jamie and Damon James voluntarily relinquished legal custody of their child to Jamie's parents, Cynthia and Rick Hutchinson, is a fact. But, none of the parties involved, not the Jameses, not the Hutchinsons, and certainly not

the juvenile court, which adopted a case plan designed to enable the Jameses to regain custody of their child, considered that relinquishment of custody to be permanent. This court should defer to the judgment of the juvenile court, which, having heard all the evidence, is in the best position to determine who should have custody of the child.

{¶ 36} The majority opinion's concern for stability in the lives of children is noble, but it should not trump the "fundamental liberty interest of natural parents in the care, custody, and management of their child[, which] does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. See *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16. Though I do not doubt that the Hutchinsons have provided a good home for the child, they are not his parents, and R.C. 3109.04(E)(1) should not be applied as if they are. I dissent.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 37} I respectfully dissent because I believe that R.C. 3109.04(E) does not apply when determining child-custody disputes that originate in juvenile court. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 26; *In re Perales* (1977), 52 Ohio St.2d 89, 96, 6 O.O.3d 293, 369 N.E.2d 1047. Therefore, I believe that the majority's analysis is mistaken. However, if the statute were to apply, I agree with the court of appeals that it is unconstitutional as applied in this case. Once the trial court determined that Jamie and Damon James had become suitable parents who were able to provide a safe and stable environment for their child and that it was in the child's best interest to be reunited with his parents, I believe it was proper for the trial court to order custody returned to the parents.

{¶ 38} We explained in *In re Hockstok* that custody disputes fall within one of two statutes, depending upon the circumstances. 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 13. R.C. 3109.04 applies to custody disputes arising out of divorce actions in domestic-relations court in which the opposing parties are usually the child's parents, while R.C. 2151.23(A)(2) authorizes a juvenile court to determine custody issues of any child who is not a ward of another court of the state, which often involve proceedings between a parent and a nonparent. Id. at ¶ 14–15; *In re Perales*, 52 Ohio St.2d 89, 96, 6 O.O.3d 293, 369 N.E.2d 1047.

{¶ 39} This case began in juvenile court when the state intervened because of allegations of abuse and neglect against the minor child's parents, Jamie and Damon James. The state was awarded temporary custody of the child. Under

Ohio's child-welfare laws, the overall goal in the case was "to eliminate with all due speed the need for the out-of-home placement so that the child [could] safely return home." R.C. 2151.412(F)(1)(b).

{¶ 40} The juvenile court adopted a case plan with goals for the parents to achieve in order to regain custody of their son. Jamie and Damon worked diligently, but the process took some time. In the meantime, the maternal grandparents had the desire and the means to care for the child. In lieu of placing him with foster parents who would be strangers, Jamie, Damon, and the state agreed to temporarily transfer legal custody to the maternal grandparents while the parents continued to work to become suitable parents. The court did not terminate the parental rights of Jamie and Damon, and there was no indication in the record that the state sought to permanently terminate those rights.

{¶ 41} During this time, Jamie and Damon regularly visited with their child. They were ordered to pay child support to the grandparents. They did everything the court asked of them. They changed the circumstances that had originally caused the state to remove their child from them. Had the child remained committed to the state's temporary custody, the court would have returned the child to their custody once Jamie and Damon had successfully completed the case plan. But in this case, when Jamie and Damon asked the court to return their child to them, the grandparents fought to keep legal custody.

{¶ 42} The trial court, being in the best position to evaluate the situation, agreed that Jamie and Damon had proven they were now suitable parents. An independent investigator, appointed at the grandparents' request, recommended that the family be reunified. The court ordered that the child be returned to Jamie and Damon's custody with visitation rights to his grandparents.

{¶ 43} The grandparents argued that the trial court was also required to find, under R.C. 3109.04(E), that there had been a change in the circumstances of the child or of the residential custodian. However, the appellate court held that R.C. 3109.04(E) was unconstitutional as applied to the child's situation and that the standard for modification in a custody dispute between a parent and a nonparent custodian who has legal custody should be the best interest of the child. The court of appeals agreed that "the trial court had substantial competent and credible evidence to determine that it was in [the child's] best interest to be returned to his parents' custody." *In re James,* 163 Ohio App.3d 442, 2005-Ohio-4847, 839 N.E.2d 39, ¶ 65.

{¶ 44} Because this case originated in juvenile court and that court acquired jurisdiction under R.C. Chapter 2151, I do not believe that R.C. 3109.04(E) applies. R.C. 3109.04(E) is within the chapter of the Revised Code that addresses the jurisdiction of domestic-relations courts, and it "dictates the rules and

procedures for domestic relations courts to follow in child custody cases." *Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 14. We have explained that " '[t]he clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment.' " *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153. Furthermore, the plain language of the statute applies only to parents, not third-party custodians. The statute contains multiple references to shared-parenting agreements that have no relevance in a custody dispute originating in a juvenile court.

{¶ 45} Nevertheless, if the statute were to apply as the majority suggests, I agree with the court of appeals that it is unconstitutional as applied in this case. Parents have a fundamental right to the care, custody, and control of their children. *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49; *In Re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. It has long been recognized in Ohio that the best interest of the child is the primary concern and that parents have a paramount right to custody of their minor children unless they forfeit that right by contract or abandonment. *Perales,* 52 Ohio St.2d at 97, 6 O.O.3d 293, 369 N.E.2d 1047, citing *Clark v. Bayer* (1877), 32 Ohio St. 299. We have held that "the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." *Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16.

{¶ 46} The majority has decided that the plain language of the statute controls despite the parents' fundamental right to custody. The majority reasoned that Jamie and Damon "voluntarily relinquished" custody of their son, a phrase that intimates that they willingly abandoned custody. That was not the case. These parents did not forfeit permanent custody. They merely agreed to temporarily transfer legal custody of the minor child to the grandparents while they worked to improve their lives. A grant of legal custody is not permanent custody. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 13; *Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, fn. 1. It does not terminate all parental rights. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 17. I do not equate a stipulation to transfer legal custody to the grandparents to keep the child out of the foster-care system to a "voluntary relinquishment" of custody.

{¶ 47} The majority also justified its result on the basis that Jamie and Damon may attempt to regain custody in the future if they are able to prove a change in circumstances. The majority cites several cases to illustrate factors that may be

relevant to establish a change in circumstances. Each case, however, involved a dispute over custody between a residential *parent* and a nonresidential *parent*. In each case, a permanent-custody order was issued by a domestic-relations court. These cases present exactly the situation that R.C. 3109.04(E) is designed to address. But that is not the situation presented here.

{¶ 48} A court may infringe upon the fundamental liberty interest of a parent in child custody only in limited circumstances. *Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 17; *Perales,* 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, at syllabus. The juvenile court determined that Jamie and Damon successfully completed all requirements necessary to become suitable parents and should be reunified with their child. Therefore, I believe that they were entitled to regain custody. It is their fundamental right to regain custody, and it is in the best interest of the minor child to live with his parents and sibling. The longer a child remains with the nonparent custodian, the greater the bond between them and the more stable the child's environment. Consequently, as time passes, the less likely the parents will be able to demonstrate a change in circumstances of either the child or the nonparents in order to modify custody under R.C. 3109.04(E) as the majority dictates. I believe that the majority's interpretation creates an impossible hurdle for the parents and turns R.C. 3109.04(E) from a shield into a sword. I believe this violates the parents' constitutional rights.

{¶ 49} Nevertheless, if courts must apply R.C. 3109.04(E) to custody disputes between parents and nonparents as the majority dictates, then I believe that there is sufficient evidence in the record on which this court may rely on remand to find that this child's circumstances have changed. We have held that a trial judge has wide latitude to consider all issues that may warrant a change in circumstances. *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159, syllabus.

{¶ 50} Here, the trial court recognized that Jamie and Damon were suitable parents for their child and that a positive bond had developed between Jamie and Damon and their child. I believe that the parents' ability to be reunited with their child sufficiently constitutes a change in the child's life to warrant a change of custody; otherwise there was no purpose to the juvenile court's case plan and all the underlying efforts to assist the parents with treatment plans, child support, and visitation schedules. There can be no better change in the circumstances of the child than to be reunited with his parents. The necessity for the grandparents to have legal custody no longer exists.

{¶ 51} In addition, there is no stay in the record. I presume that the child has been in the custody of his parents since the trial court's order, dated July 19, 2004. Therefore, we should not remove the child from his parents and return custody to his grandparents after all this time. I believe that these issues are sufficient for a court to find that a change of circumstances exists.

{¶ 52} The grandparents are to be lauded for their willingness to care for their grandchild while the parents worked to become better parents. But the law should not penalize Jamie and Damon for making the decision to transfer legal custody during their difficulties. The law affords parents the opportunity to improve conditions that initially cause the child to be removed from the home, so that the family may be reunited. Today's opinion contravenes the entire legislative scheme of Ohio's child-welfare laws, which are designed to care for and protect children "in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). I fear that as a result of today's opinion, troubled parents may avoid seeking help and be reluctant to relinquish temporary custody of their children for fear it will result in a permanent loss.

{¶ 53} I do not believe that R.C. 3109.04(E) applies in this case. If it does, the application of R.C. 3109.04(E) to custody disputes between a parent and a nonparent is unconstitutional as applied in this case. Therefore, I dissent.

WOLFF, J., concurs in the foregoing opinion.

------

King & Myfelt, L.L.C., Stephen R. King, and Jeffrey A. Burd, for appellants Cynthia and Rick Hutchinson.

Katz, Greenberger & Norton L.L.P., Ross M. Evans, Tawanda Edwards, and Scott H. Kravetz, for appellees Jamie and Damon James.

Shauna Hennebert, in support of neither party, for amicus curiae Court Appointed Special Advocates of Franklin County.