{¶ 29} The fundamental purpose of any child custody proceeding is to safeguard the best interest of the children involved. Schneider v.Kelley, 156 Ohio App.3d 469, 2004-Ohio-1378, at ¶ 16, citing In reBednarczuk (1992), 80 Ohio App.3d 548, 551 ("[w]hen dealing with a guardianship, the probate court is required to act in the best interest of the ward"); In re Langenderfer, 6th Dist. No. F-03-031, 2004-Ohio-4149, at ¶ 19 ("[t]he purpose of guardianship hearings is to gather information in order to determine the best interests of the prospective ward"). In the present case, both the majority and the trial court demonstrate a disturbing lack of consideration for the child who is the subject of these proceedings. Accordingly, I respectfully dissent.
 {¶ 30} Tyler Ian Adkins had been in the custody of his paternal grandparents since at least July 2004, with the consent of his biological mother, Nicole Adkins. In April 2006, Nicole sought to regain custody of Tyler. Nicole remains married to Tyler's father, although she is living with and having the child of another man.
 {¶ 31} A hearing was held before a probate court magistrate. The only persons to testify were the grandparents, the mother, and persons partisan to one side or the other. No testimony was taken from Tyler and no evidence was presented by a guardian ad litem or other objective participant.
 {¶ 32} The magistrate hearing the matter determined "that the guardianship should not be terminated until * * * Tyler sees a psychologist or psychiatrist who will file a report with the Court regarding Tyler's emotional stability and ability to return to live with his mother, including issues surrounding her pregnancy * * * [;] Ms. Adkins be ordered to complete parenting classes and file a certificate of completion with the Court * * * [; and] a home study be performed of Ms. Adkins' home." The magistrate acknowledged Nicole *Page 10 
"has improved her life since the inception of the guardianship" but had concerns about Nicole's plans for bringing Tyler back into the home, Nicole's use of profanity directed at Tyler, and Tyler's emotional state.
 {¶ 33} The probate court reversed the magistrate's recommendation that the guardianship be continued until Tyler is evaluated and a home study is conducted, instead ordering the termination of the guardianship "upon acceptance of jurisdiction by the Lake County Domestic Relations Court." The probate court based its decision on its belief that the "Lake County Court of Domestic Relations is a more appropriate forum to determine the custody of the minor child herein."
 {¶ 34} As the majority and probate court recognize, "[w]hen a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless such ward selects another suitable guardian." R.C. 2111.46. "Good cause" is not defined in the statute. The majority and probate court, in effect, equate "good cause" with a parent's "preferential status" as custodian of their children without regard for the best interests of the children. Good cause, however, does not principally relate to a parent's right to custody of a child, but to the welfare of the child. As this court has previously stated, "it has generally been held that a guardian may be removed for any good cause in the discretion of the probate courtwhen the interests of the ward require it" In re Joles (June 30, 2000), 11th Dist. No. 99-L-087, 2000 Ohio App. LEXIS 2987, at *17 (emphasis added).
 {¶ 35} Other courts, too, have recognized "that when determining if there is good cause to remove a guardian, the term `good cause' is broad enough to encompass the *Page 11 
best interest of the child." In re Kinney, 7th Dist. No. 99-BA-52, 2001-Ohio-3280, 2001 Ohio App. LEXIS 2581, at *7 (citation omitted);In re Spriggs (April 24, 1990), 4th Dist. No. 89-CA-1803, 1990 Ohio App. LEXIS 1638, at *8 ("the focus * * * properly should be upon good cause, a term which is broad enough to encompass the child's best interest").
 {¶ 36} This point has been definitively established by the recent Ohio Supreme Court decision In re James, 113 Ohio St.3d 420, 2007-Ohio-2335, holding that, pursuant to R.C. 3109.04(E)(1)(a), a trial court is precluded "from modifying a prior decree allocating parental rights and responsibilities unless it finds * * * that the modification of the prior custody decree is necessary to serve the best interest of the child." Id. at paragraph one of the syllabus.
 {¶ 37} The majority dismisses James because "the surrender [of custody in James] does not seem to have been temporary." This is incorrect. The award of custody to the grandparents in James, as in the present case,was temporary. Id. at ¶ 5; In re James, 163 Ohio App.3d 442,2005-Ohio-4847, at ¶ 2 ("the [grandparents] were * * * given temporary custody of Brayden").
 {¶ 38} Accordingly, Tyler's best interest should have been an integral part of the determination of whether good cause existed for the termination of the guardianship. Both the probate court and the majority have omitted this consideration, focusing instead on the mother's right to custody of Tyler, a right which she had voluntarily surrendered.
 {¶ 39} Moreover, consideration of Tyler's best interest is impossible in the present case because no effort has been made to determine those interests. The *Page 12 
magistrate was justifiably concerned for Tyler's welfare and ordered a psychological and home study before the guardianship would terminate. These measures were appropriate in light of the magistrate's refusal to interview Tyler in camera. The probate court disregarded these considerations, preferring to have these issues determined by the domestic relations court.
 {¶ 40} Finally, the probate court violated the Rules of Civil Procedure by refusing to consider the psychological and home studies. The Rules provide that "[i]f one or more objections to a magistrate's decision are timely filed * * * the court may hear additional evidence, but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Civ.R. 53(D)(4)(d).
 {¶ 41} This court has repeatedly held that, "while the trial court has discretion to refuse to consider additional evidence, the trial court must first give the offering party an opportunity to demonstrate that such evidence could not have been produced before the magistrate."Porter v. Ferrall, 11th Dist. No. 2002-P-0109, 2003-Ohio-6685, at ¶ 16, quoting McClain v. McClain (Sept. 30, 1999), 11th Dist. No. 98-P-0002, 1999 Ohio App. LEXIS 4655, at *12-*13; accord, Flynn v. Flynn, 10th Dist. No. 03AP-612, 2004-Ohio-3881, at ¶ 20.
 {¶ 42} Because the psychological and homes studies were recommended by the magistrate and were not available for consideration while the magistrate was making her decision, the probate court should have included these studies in the record, or, at least, given "an opportunity to demonstrate that such evidence could not have been produced before the magistrate." *Page 13 
 {¶ 43} For the foregoing reasons, appellants' assignments of error are with merit. The trial court erred and abused its discretion by arbitrarily terminating Tyler's guardianship without considering Tyler's best interests and by failing to interview Tyler and/or allow the psychological and home studies into evidence. The decision of the probate court should be reversed. *Page 1