[Cite as *In re E.R.P.*, 2012-Ohio-1053.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97124**

# IN RE: E.R.P.
# A Minor Child
# [Appeal by Mother]

## JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. CU-4105159 and CU-4105160

**BEFORE:** Jones, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

**ATTORNEY FOR APPELLANT**

Betty C. Farley
17316 Dorchester Drive
Cleveland, Ohio 44119


**FOR APPELLEE**

E.P., Pro se
312 South Main Street
Oberlin, Ohio 44074

LARRY A. JONES, SR., J.:

{¶1} Appellant, "P.Y." ("Mother" or "the mother"), appeals the trial court's denial of her motion to modify custody. For the reasons that follow, we affirm.

{¶2} In 2000, Mother gave birth to a daughter. In 2001, she gave birth to a son. Appellee, E.P. ("Father" or "the father"), is the father of both children; he and Mother never married. In 2006, Mother and Father entered into a shared parenting agreement ("Agreement") in Cuyahoga County Common Pleas Court, Juvenile Division. The agreement designated Father as the residential parent but Mother was to receive parenting time on Wednesday evenings and alternating weekends. The agreement provided for a shared schedule for holidays and vacation and further outlined requirements for parenting methods, medical care, education, miscellaneous expenses, and communication. At this time, Father lived with the children in Bedford.

{¶3} In August 2009, Father filed a "Notice of Intent to Relocate" so he could move with the children to Oberlin. Mother immediately filed an emergency motion for custody and a "Motion to Modify Custody and/or Visitation and Designate Mother as Residential and Custodial Parent for School Purposes and to Terminate and Modify Child Support." Mother argued that a change in custody was warranted because she thought the father was being evicted and had unstable employment. The trial court denied the emergency motion for custody.

{¶4} After a settlement between the parties could not be reached, the court set the mother's motion for trial and heard multiple days of testimony spanning from June 2010 through February 2011. Mother was represented by an attorney; Father proceeded pro se. The following pertinent evidence was presented at trial.

{¶5} Mother testified that she had been married to N.G. for almost two years and her children got along well with their stepfather, who was currently employed at a local tavern. Mother testified she had been diagnosed with major recurring depression with bipolar features but was taking medication and saw a psychiatrist once a month. She testified about her daily life with the children and that she was currently in school studying to be a veterinarian technician.

{¶6} Mother complained that when she picked her children up from their father for her weekends, they were often wearing dirty clothing and were "filthy." According to Mother, Father would not allow their daughter to wear deodorant and threw away the deodorant the mother bought her, would not allow the children to use shampoo, and had not bought their daughter a training bra. She further testified that she felt that Father made the children do chores that she believed improperly reinforced gender stereotypes and did not allow the children to participate in extracurricular activities. Mother explained that her son had behavioral problems and she thought she was better equipped to handle the issues with his school.

{¶7} On cross-examination, Mother admitted that two months after she met N.G., he was arrested and jailed for possession of marijuana, but she denied there was any drug

use in the home. Mother also admitted that she had previously claimed her daughter as a deduction on her taxes, but argued that she did not know she was doing anything wrong. When asked why she had not provided money for the daughter's ballet lessons or the children's summer camp, the mother testified that Father had not asked her to contribute. She also admitted to taking her children to two music concerts where, the father argued, there was rampant drug use.

{¶8} N.G., on the other hand, testified both that they had never taken the children to those concerts and also that he was currently unemployed. He told the court he had a good relationship with his stepchildren and his wife was very nurturing toward her children.

{¶9} N.G. admitted he had been arrested and sent to jail for possessing marijuana, but denied dealing drugs. N.G. also denied watching violent movies with the children present or ever physically abusing the son. N.G. admitted the police had once come to the house to investigate an abuse allegation against him but denied the specifics surrounding the event.

{¶10} The children's former elementary school principal testified that the father had refused to allow his children to wear clothing to school that conformed with the dress code. The principal testified that when he questioned the father about complying with the school's dress code, the father became upset and used profane language in front of a group of young children. On cross-examination, the principal testified that he thought the father was very active in the children's lives.

**{¶11}** Father testified that he moved from Bedford to Oberlin in 2009 because his landlord was going to sell the house he had been renting; he denied being evicted. Father testified that he had previously been self-employed as a commercial trucker but, at the time of trial, was set to take a job at a local stone manufacturer. Father testified that he had not graduated from high school and had minimal income, but was able to feed his children and pay his bills. He further testified that his son had always had severe emotional problems and was in counseling.

**{¶12}** According to the father, his children previously confided that N.G. was physically abusive towards them. He admitted calling the police when his son told him that N.G. had held him upside down by his ankles over a tub and dunked him in the tub, causing the son to hit his head on the side of the bathtub.

**{¶13}** The GAL testified that he thought the children should be placed with their mother. According to the GAL, the children "blossomed" more when they were with their mother and the father's parenting style was "more restrictive, more controlling, a somewhat more spartan lifestyle * * * more set in his ways [and] the children don't have freedom of choice." He stated the "children have always said to me they'd rather be with their mother."

**{¶14}** In July 2011, the trial court issued an order denying Mother's motion to modify custody. In its order, the trial court found that the mother failed to show that a modification of custody was necessary to serve the best interest of the children and that

the harm likely to be caused by a change of environment was not outweighed by the advantages of the change of environment to the children.

{¶15} It is from this order that Mother now appeals, raising the following assignments of error, which will be combined for our review:

I. The trial court applied the incorrect standard of proof of clear and convincing evidence adduced at the trial herein.

II. The trial court['s] decision to deny the mother's motion to modify custody and/or visitation and designate mother as residential parent was not based on a preponderance of the evidence and therefore constitutes an abuse of discretion.

III. The trial court's decision to deny appellant's motion to be residential parent or custodian of the children was against the manifest weight of the evidence.

## Standard of Review

{¶16} R.C. 3109.04(E)(1)(a) governs the modification of an existing parenting agreement. The statute provides that a court may not grant a modification of parental rights unless, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, the court finds: (1) there was a change in circumstances; (2) a modification is necessary to serve the best interest of the child; and (3) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii).

{¶17} A change in circumstances is a threshold requirement intended to provide some stability to the custodial status of the child. *Mansbery v. Bach*, 8th Dist. No. 96471, 2011-Ohio-6627, citing *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866

N.E.2d 467. To warrant an inquiry into whether the best interest of a child would be served by a change of parental rights and responsibilities, the court need not find that a "substantial change has occurred," but the "change must be a change of substance, not a slight or inconsequential change." *Id.*, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

{¶18} The clear intent of R.C. 3109.04(E) is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent without custody thought he or she could provide the children a "better" environment; it is an attempt to provide some stability to the custodial status of the children, even though the noncustodial parent may be able to prove that he or she can provide a better environment. *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶19} A trial court's decision that there has been a change in circumstances and modification of custody is necessary to serve the best interest of the children must be supported by "competent, credible evidence." *In re B.W.*, 8th Dist. Nos. 96550 and 96551, 2011-Ohio-4513. "[I]n determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Mansbery* at ¶ 22, citing *Wyss* at 416-417. Accordingly, the trial court's determination on such issue will not be disturbed absent an abuse of discretion. *Id.*

Change In Circumstances

{¶20} In the instant case, Mother argues that there was a change in circumstances of the children, to-wit: the father moved them to Oberlin, which was an hour's drive from the mother's house, and the father did not provide the children with a safe and stable environment. Mother further argued that the children's ages, 9 and 11 at the time of trial, warranted a change in custody. Specifically, the mother pointed out that the father refused to afford his daughter privacy in the bathroom; failed to provide any separation between the children's bedrooms; and refused to allow the children to wear their school uniforms or allow the daughter to wear deodorant, both of which resulted in notes being sent home from school. The mother also pointed out that the father had not obtained his high school diploma or equivalent, had a sporadic work history, had been confrontational with school officials, and was not, in her opinion, a credible witness.

{¶21} The mother also relies on the GAL's testimony that, in his opinion, the mother was the more suitable parent; the GAL testified that he had visited with the children two or three times and thought the children would be more "comfortable" in the mother's home because she was less "controlling" than the father.

{¶22} In its journal entry denying the mother's motion, the trial court found that the only change in circumstances that had occurred was the "pre-adolescence" of the children, but that change did not warrant modification of the parenting agreement. The trial court specifically found that the father's move to Oberlin was not a change of circumstance as a matter of law and the parents were able to follow the parenting agreement even after the move.

**{¶23}** The act of moving with a child does not, by itself, constitute a substantial change in circumstances to warrant a change of custody. *Rodkey v. Rodkey*, 8th Dist. No. 86884, 2006-Ohio-4373. Although father's move to Oberlin may have made it more difficult for the mother to see her children or to attend their school conferences and appointments, the evidence at trial was that the shared parenting time had continued as outlined in the agreement even after the father moved. Father also submitted evidence that he had not been evicted but, rather, the owner of the Bedford house decided to sell the house so he needed to find a new place to live. Father testified he looked at various areas of Cleveland and decided on Oberlin due to its excellent school system, supportive community, and the fact he could rent a large single-family home with an attached garage for the same price he was paying in Bedford.

**{¶24}** As to the change in circumstances noted by the trial court, pre-adolescence, the father testified that he washed his kids' hair with a soap that could also be used as shampoo, his daughter did not need deodorant, and the children did have separate sleeping areas at his home.

**{¶25}** Based on these facts, the trial court did not err or abuse its discretion in finding that any change in the children's circumstances did not warrant a change in custody.

Best Interest of the Children

**{¶26}** R.C. 3109.04(F)(1) sets forth a non-exhaustive list of factors that a court may consider in determining the best interest of a child; but, pursuant to R.C. 3109.04, the court shall consider "all relevant factors." Here, the trial court considered the following factors found in R.C. 3109.04(F):

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * *

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court.

{¶27} The trial court further indicated that it considered the following as to each child: (1) the age of the child; (2) that the parents "work in tandem and cooperatively regarding the health and safety of the child"; (3) the wishes and concerns of both the child and the parents; (4) "the ability of the parents to cooperate and make decisions jointly"; (5) "the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent"; and (6) the geographic proximity of the parents to each other.

{¶28} Mother argues that it is in the best interest of the children to be placed with her because she better provides for their basic needs, the father withheld medical care, neglected the children's education, and did not allow them to eat meat. The evidence presented at trial, however, showed that the father adequately provided for the children's

basic needs, was involved in their education and extracurricular activities, and provided a healthy diet for the children. Although there was testimony that the father neglected his daughter's dental needs, there was also testimony that the mother did not take the children for their scheduled medical appointments even when the court had ordered her to do so. In addition, there were allegations of abuse by mother's husband against the son and N.G. had previously been arrested for marijuana possession and served time in jail for the drug conviction.

{¶29} Mother argues that the court failed to consider where the children stated they wanted to live; but the journal entry indicates that the trial court considered the wishes of the children "as expressed by the GAL to the Court." There is no evidence in the record that the mother requested an in camera interview of the children or that the trial court failed to consider the GAL's report and testimony.

{¶30} Finally, the trial court's finding that the harm in modifying the custody arrangement outweighed any benefit was supported by the evidence. The children had been placed with their father, pursuant to the parenting agreement, since 2006. Father was extremely involved in the children's lives. The daughter was excelling in school and involved in numerous extracurricular activities, and the son was in counseling to address his behavioral issues. Although the father's home was by all accounts more spartan than the mother's, there was no evidence that he did not provide for the basic needs of his children or that his parenting style was harmful to the children.

**{¶31}** Based on these facts, we do not find that the trial court's denial of Mother's motion to modify custody was against the manifest weight of the evidence or an abuse of discretion.

**{¶32}** The assignments of error are overruled.

**{¶33}** Judgment affirmed.

It is ordered that appellee recover from appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
SEAN C. GALLAGHER, J., CONCUR