[Cite as *In re M.G.*, 2024-Ohio-695.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
DEFIANCE COUNTY**

IN RE:                                                    CASE NO. 4-23-09

    M.G.

[SHARON J. - APPELLANT]                  **O P I N I O N**

**Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 31768**

**Judgment Affirmed**

**Date of Decision:  February 26, 2024**

**APPEARANCES:**

    *Ian A. Weber* **for Appellant**

**WALDICK, J.**

{¶1} Paternal grandmother-appellant, Sharon J. ("Sharon"), brings this appeal from the June 28, 2023, judgment of the Defiance County Common Pleas Court, Juvenile Division, granting legal custody of M.G. to mother-appellee, Holly G. ("Holly"). On appeal, Sharon argues that there was no change in circumstances since the last custody decree to justify a change in custody and that the trial court erred by not appointing an attorney for the child since the child's wishes conflicted with the GAL's recommendation. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} M.G. was born in April of 2014. Her parents are Holly G. and Michael G.; however, Michael is now deceased, having passed in a motorcycle accident in November of 2022.

{¶3} At the time M.G. was born, Holly and Michael both struggled with substance abuse. During M.G.'s infancy, Holly served a prison term on a charge related to methamphetamines and Michael was also incarcerated for a period of time. Due to the issues with Holly and Michael, Sharon, Michael's mother, was granted legal custody of M.G.

{¶4} Holly was released from prison in 2018 and she started exercising parenting time with M.G. that year. Over the ensuing years, Holly remained drug-

free, had another child (not with Michael), and secured part-time employment so that she could earn money while still being a full-time mother.

**{¶5}** By all accounts, Holly and Sharon had a tumultuous relationship. Holly believed that Sharon was alienating M.G. from Holly. For example, despite Holly having court-ordered visitation, Sharon did not allow Holly to have any contact with M.G. from November 2021 through July of 2022. In addition, the record indicates that Sharon allowed M.G. to primarily reside with Michael, despite court orders to the contrary. Holly filed a motion for contempt for Sharon's failure to comply with the court-ordered visitation, beginning the instant case.

**{¶6}** Michael and Holly each individually filed motions for reallocation of parental rights and responsibilities of M.G. However, Michael's motion was dismissed after his death. Whereupon, Sharon filed a motion to remain the sole residential parent and legal custodian of M.G.

**{¶7}** The pending motions proceeded to a final hearing before a magistrate on December 12, 2022. At the conclusion of the hearing, the magistrate had the parties submit proposed findings of fact and conclusions of law.

**{¶8}** On February 1, 2023, the magistrate issued a decision summarizing the evidence presented at the final hearing. The magistrate determined that in order to alter the current custody arrangement, it had to determine a change in circumstances had occurred since the court's last decree. The magistrate determined that a change had occurred due to the death of Michael, whom M.G. was primarily residing with

in contravention of court orders. In addition, the magistrate recognized Sharon had unilaterally terminated Holly's parenting time for a significant period.

**{¶9}** The magistrate then proceeded to determine that it was in M.G.'s best interests that Holly be granted legal custody of M.G., with Sharon having visitation. Finally, the magistrate determined that Holly's motion for contempt was moot and dismissed it.

**{¶10}** Sharon filed objections to the magistrate's decision arguing that there had not been a change in circumstances to warrant altering the custody arrangement. Sharon requested a transcript of the final hearing; however, the trial court noted, "[f]or unexplained reasons there is only a partial transcript of the proceedings, which covered just a brief period of the entire [final] hearing." Because there was only a partial transcript, the trial court instructed counsel to submit an "affidavit of fact" to supplement the record pursuant to Civ.R. 53(D)(3)(b)(iii).

**{¶11}** On June 28, 2023, the trial court filed its judgment entry overruling Sharon's objections to the magistrate's decision. The trial court determined that there had been a change in circumstances in this case and that it was in M.G.'s best interests that Holly be granted legal custody. It is from this judgment that Sharon appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The Trial Court abused its discretion by finding that there was a change in circumstances that would justify a change in custody for the minor child.**

**Second Assignment of Error**

**The Trial Court abused its discretion by not appointing an attorney for the minor child when her wishes were in direct conflict of the guardian ad litem recommendation and Superintendence Rule 48.**

*First Assignment of Error*

{¶12} In her first assignment of error, Sharon argues that the trial court erred by determining that there was a change in circumstances that would justify a change in custody for M.G.

Standard of Review

{¶13} "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), at paragraph two of the syllabus. Accordingly, we review the trial court's determination regarding a change of circumstances for an abuse of discretion. *In re L.M.*, 2d Dist. Greene No. 2010-CA-76, 2011-Ohio-3285, ¶ 15; *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846

(1988).[1] An abuse of discretion does not exist unless a trial court's decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence. *Id*.

Analysis

**{¶14}** Before a trial court can modify a prior decree or disposition of legal custody, it must find that a change in circumstances has occurred. R.C. 3109.04(E)(1)(a) (applied by the trial court in this case); R.C. 2151.42.[2] While there are no set criteria for what specifically constitutes a change in circumstances, a change "can include a breakdown in communication between the parents—or in this case a parent and a nonparent custodian—and their inability to communicate and cooperate." *Polhamus v. Robinson*, 3d Dist. No. 8-16-11, 2017-Ohio-39, 80 N.E.3d 1142, ¶ 31, citing *Eatherton v. Behringer,* 3d Dist. Seneca No. 13–12–23, 2012-Ohio-5229, ¶ 43. In addition, interference with a child's visitation may be considered when determining whether a change in circumstances has occurred. *Id*. Other factors might include a new marriage creating hostility and impacting visitation; the advancement of a child from infancy to adolescence; and unruly

---

[1] The Supreme Court of Ohio recently clarified the standard of review for *permanent custody* cases in *In re Z.C.*, ___ Sup.Ct.3d ___, 2023-Ohio-4703. In *Z.C.*, the Supreme Court of Ohio distinguished private custody matters from permanent custody issues and seemed, in dicta, to reaffirm that abuse of discretion is the proper standard for cases such as the one before us. *Z.C.* at ¶ 12.

[2] The trial court applied R.C. 3109.04 to this case, which was applied in similar circumstances by the Supreme Court of Ohio in *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E. 2d 467; however, the dissenters in *James*, emphasized that R.C. 3109.04 applies to the allocation of parental rights and responsibilities and R.C. Chapter 2151 applies to cases originating in juvenile court involving abuse/dependency and neglect. It is not entirely clear from the record whether Sharon acquired custody of M.G. through a voluntary relinquishment of rights or whether M.G. was the subject of an abuse, neglect, dependency case. The record indicates that some case was initiated by a children's services agency but it is not clear whether M.G. was ever adjudicated abused, dependent, or neglected. Regardless, as the Supreme Court of Ohio stated in *James*, the analysis under both statutes would be similar. *James* at ¶ 26.

behavior of the residential parent involving the police. *In re Brayden James*, 113

Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 18.

{¶15} In this case, the trial court conducted the following analysis when

reviewing, and agreeing with, the magistrate's change in circumstances finding:

> [The magistrate] [] outlines the basis of her belief that there has been a significant change in the circumstances of the minor child, alluding primarily to the death of MG's father, Mr. G[.], on September 28, 2022. At the time of his death, a motion was pending whereby he sought return of custody to him, a motion which the objector [Sharon] apparently supported. Further at the time of the filing of [Father's] motion, and in violation of the September 28, 2021 order, [Sharon] had permitted MG to live primarily with [Father]. * * *
>
> The death of the juvenile's father is a significant change in circumstances of the child. While the father was not the custodian, he certainly would have been involved in the proceedings granting legal custody to his mother. This constitutes a change in circumstances from the time of the prior order. Beyond that [Sharon] disregarded the Court's prior order granting her custody by allowing the juvenile to reside with [Father]. This placement by her was disrupted by his death which reinforces the significance of his death to the juvenile.
>
> * * *
>
> Finally the [m]agistrate concluded that any harm in a change of environment is outweighed by the benefit of the change of environment[.] * * * It is clear to the Court that [Sharon] has repeatedly violated the orders of this court. She unilaterally discontinued [Holly's] parenting time. She unilaterally discontinued court ordered counseling. She unilaterally placed the juvenile to whom she had been granted custody with her son. She also appeared without cause at the in camera interview to spirit MG away from her mother. Her repeated disregard for the Court's orders make a change in environment beneficial to the child as there is no indication that [Holly] willy disregard the Court's mandates, or that [Sharon] will cease to do so.

(Doc. No. 67).

{¶16} In our own review of the matter, we find that the trial court identified key changes in the circumstances for the child, those being: the death of her father and the utter disregard of court orders by Sharon. For example, M.G. was improperly residing with her father due to Sharon's "unilateral" decisions in violation of court orders, and Sharon withheld visitation from Holly for over half a year. As stated previously, interference with visitation can be evidence to support a change in circumstance. *See Polhamus v. Robinson*, 3d Dist. No. 8-16-11, 2017-Ohio-39, 80 N.E.3d 1142, ¶ 31.

{¶17} The record before us reflects a great deal of animosity between Sharon, Sharon's family, and Holly. In fact, when finding Sharon in contempt for her actions, the trial court stated that it believed Sharon "has done everything possible to alienate [Holly] from MG, and if not punished for doing so [she] will continue to be an impediment to a stable relationship between [Holly] and MG." (Doc. No. 67). These actions and attempts at alienation when Holly had, by all accounts, turned her life around and maintained her sobriety were appropriately evaluated by the magistrate and the trial court.

{¶18} In sum, there were multiple factors here that established a change in circumstances, thus we do not find that the trial court abused its discretion. We note that courts have held that even where the change of circumstances "issue is perhaps close," a trial court does not abuse its discretion by finding a change in

circumstances. *See In re A.S.*, 2d Dist. Montgomery No. 27156, 2016-Ohio-7622, ¶ 12. Here the evidence supports the trial court's decision.[3] Therefore, Sharon's first assignment of error is overruled.

*Second Assignment of Error*

{¶19} In her second assignment of error, Sharon argues that the trial court erred by failing to appoint an attorney for M.G. when her wishes were in direct conflict to the GAL's recommendation.[4]

Analysis

{¶20} At the outset we emphasize that we are precluded from reviewing this issue because Sharon did not file a specific objection to the magistrate's decision on this issue. Objections to a magistrate's decision must be "specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). The failure to file specific objections is treated the same as the failure to file any objections. *In re K.L.F.*, 12th Dist. Butler Nos. CA2020-08-083 and CA2020-08-084, 2021-Ohio-2290, ¶ 9. Juvenile Rule 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Courts have held that unless an appellant argues a claim of plain error, the appellant has waived claimed errors not

---

[3] Although the trial court did not rely on it, we would also note that there were some questions about Sharon's health due to surgeries limiting her mobility.

[4] We note that the GAL stated in her report that the child was clearly coached.

objected to below. *K.L.F.*; *In re K.S.*, 12th Dist. No. CA2022-09-081, 2023-Ohio-1951, 216 N.E.3d 1282, ¶ 34.

**{¶21}** Here, although Sharon filed objections to the magistrate's decision, she did not make any specific objection to the failure to appoint an attorney for M.G. She also does not make a plain error argument on appeal; therefore, she has waived this argument. *In re K.S.* at ¶ 35.

**{¶22}** Nevertheless, even if we were to review this issue, we could find no plain error here given that the child was interviewed *in camera* and her "desires" were stated to the court both during that interview and through the GAL, even though the GAL's recommendation differed from the child's expressed wishes.[5] Thus the trial court was aware of M.G.'s feelings.

**{¶23}** Moreover, Sharon cites Superintendence Rule 48 to support her argument that the trial court erred here, but courts have held that the Superintendence Rules are "administrative directives only and are not intended to function as rules of practice and procedure," and that they are "purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants."[6] *Pettit v. Pettit*, 12th Dist. Fayette No.

---

[5] Again, we note that the GAL indicated the child had been coached.

[6] Sharon also supports her argument by citing *Dell v. Dell*, 6th Dist. Lucas No. L-86-133, 1986 WL 15064, an older case with an entirely different procedural posture. Notably, *Dell* makes no reference to the Superintendence Rules and it has never been cited by another Ohio Court. Furthermore, *Dell* does not upend the well-established law that Sup.R. 48 does not create substantive rights *even if a GAL fails to comply with a rule*. *In re H.M.*, 144 N.E.3d 1124, 2019-Ohio-3721, ¶ 81 (3d Dist.). A parent would have to demonstrate prejudice based on any lack of compliance, *see id.*, and unlike any situation in *Dell*, there can be no prejudice here because the child's wishes were clearly expressed *directly to the trial court*.

CA2011-08-018, 2012-Ohio-1801, ¶ 12. For all of these reasons, Sharon's second assignment of error is overruled.

*Conclusion*

**{¶24}** Having found no error prejudicial to Sharon in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Defiance County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**