[Cite as *Speelman v. Campbell*, 2021-Ohio-2670.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

HUNTER MOREY

    Plaintiff

    v.

SAVANNA CAMPBELL

    Appellee

    and

CAROL and RICK SPEELMAN

    Appellants

C.A. No.     29742

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR 2013-09-2654

DECISION AND JOURNAL ENTRY

Dated: August 4, 2021

SUTTON, Judge.

{¶1}    Appellants, Carol and Richard Speelman ("Grandparents"), appeal from the decision of the Summit County Court of Common Pleas, Domestic Relations Division, denying their motion to set aside a magistrate's decision. This Court affirms.

I.

{¶2}    Grandparents are the maternal grandparents of M.M., who was born in July 2011. When M.M. was ten months old, Grandparents filed a complaint for legal custody of her in Juvenile Court because her mother ("Mother") was facing a term of prison. Paternity was established during the proceeding, and M.M.'s father ("Father") likewise sought legal custody. Thereafter, Mother was sentenced to three years in prison, and Grandparents withdrew their

complaint. The matter was then transferred to the Domestic Relations Division of the Summit County Court of Common Pleas to litigate Father's motion for legal custody. A custody hearing was scheduled and, in the interim, M.M. was placed in Father's temporary custody.

{¶3} Once the Domestic Relations Division assumed jurisdiction of the case, Grandparents filed a motion for legal custody. The parties reached an agreement on temporary visitation, and, for over a year, M.M. lived with Grandparents three days of the week and lived with Father the remainder of the time. On the days M.M. lived with Grandparents, the parties agreed that phone calls and visits with Mother at a pre-release facility would be permitted.

{¶4} Mother and Father ultimately settled on a shared parenting plan, which the court adopted in January 2014. The plan called for the current temporary custody arrangement and visitation schedule to continue for the duration of Mother's incarceration. Upon Mother's release, both Mother and Father would be considered M.M.'s residential parent and exercise a 50/50 parenting schedule. The plan also provided that, upon the death of either parent, custody would fall to the surviving parent. The trial court entered judgment on the shared parenting plan and, pursuant to that judgment, dismissed all pending motions in the case.

{¶5} In November 2015, less than two years after Mother and Father executed their shared parenting plan, a modified shared parenting plan was filed. The modified plan represented an agreement between Mother, Father, and Grandparents. It provided that, effective immediately, Father and Grandparents would be considered M.M.'s residential caretakers and abide by the parenting schedule set forth therein. The modified plan did not set forth any parenting time schedule as to Mother. Because Mother intended to live with Grandparents after her release from prison, it was understood by the parties that she would see M.M. when Grandparents exercised

their parenting time. The modified plan provided that, upon the death of either parent, custody would fall to Father or Grandparents.

{¶6} Subsequently, Father passed away. His death prompted Mother, in May 2016, to file a motion to reallocate parental rights and responsibilities. At the time, Mother was living on her own and sought to be named M.M.'s residential parent. A magistrate held a hearing on Mother's motions and issued a decision. The magistrate "emphatically disagree[d]" with Mother's position that she should be named residential parent and legal custodian. The magistrate determined that there had been "no significant change of circumstances to warrant a reallocation of parental rights." Thus, the magistrate denied Mother's motion and named Grandparents as M.M.'s residential parents and legal custodians. The trial court immediately entered judgment on the magistrate's decision, and, thereafter, no objections were filed.

{¶7} Six months later, Mother filed another motion to reallocate parental rights and responsibilities. She alleged that Grandparents had failed to facilitate companionship time between her and M.M. and, as a result, were not acting in M.M.'s best interest. Grandparents moved to dismiss Mother's motion, and the matter was set for a hearing. One day before the scheduled hearing, the parties reached an agreement. An agreed judgment entry was filed in January 2018. The agreed entry provided Mother with scheduled visitation but further provided that Grandparents would remain M.M.'s residential parents and legal custodians. As a result of the agreed entry, the court dismissed all pending motions.

{¶8} Sixteen months later, Mother filed another motion for legal custody of M.M. She specifically alleged in her motion that a change of circumstances had occurred, warranting a reallocation of parental rights and responsibilities. Grandparents responded to the motion and moved to bifurcate the proceedings. Specifically, they asked the court to determine whether

Mother had established a change of circumstances before it considered whether modification or termination of the agreed entry would be in M.M.'s best interest. Grandparents also filed a motion to establish child support, assign responsibility for out-of-pocket medical expenses, require Mother to undergo drug testing, and order supervised visitation. Upon review, a magistrate granted the motion to bifurcate and scheduled the matter for a hearing solely on the change of circumstances issue.

{¶9} Mother and Grandparents filed briefs before the scheduled hearing. In her brief, Mother abandoned her position that a change of circumstances had occurred. Instead, she argued that she was not required to demonstrate a change of circumstances because she was a parent moving for custody against a nonparent in the context of a private custody dispute. Meanwhile, Grandparents took the position that Mother had contractually relinquished her parental rights and was required to demonstrate a change of circumstances. The magistrate heard arguments at the scheduled hearing and ultimately concluded that Mother was not required to demonstrate a change of circumstances. The magistrate issued a decision to that effect and set the matter for further proceedings.

{¶10} Grandparents moved to set aside the magistrate's decision. The trial court summarily denied their motion, and the matter remained scheduled for hearing. Before the hearing could occur, however, Mother was charged with theft and withdrew her motion for legal custody. The parties then reached an agreement on the issues that remained (i.e., those raised in the motion Grandparents filed earlier in the proceeding). An agreed judgment entry was filed wherein Grandparents expressly preserved their right to appeal the court's denial of their motion to set aside. Once the trial court adopted the agreed entry and dismissed all pending motions, Grandparents filed their appeal.

**{¶11}** Grandparents now appeal from the trial court's decision to deny their motion to set aside the magistrate's decision. Grandparents raise one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN DETERMINING THAT NO FINDING OF A CHANGE IN CIRCUMSTANCES IS NECESSARY FOR A BIOLOGICAL PARENT SEEKING TO REGAIN CUSTODY FROM A NONPARENT THIRD-PARTY[.]

**{¶12}** In their sole assignment of error, Grandparents argue that the trial court erred when it denied their motion to set aside the magistrate's decision. Specifically, they argue that the court erred when it found that Mother, as M.M.'s parent, could regain custody of M.M. from a nonparent (i.e., Grandparents) without establishing that a change of circumstances had occurred. For the following reasons, we reject their argument.

**{¶13}** Before turning to the merits of Grandparents' assignment of error, we pause to consider whether their appeal is properly before us. "The general rule is that a judgment reached by consent of the parties is not subject to appellate review." *Schmitt v. Ward*, 9th Dist. Summit Nos. 28694, 28700, 2018-Ohio-1043, ¶ 4, quoting *Board of Tp. Trustees, Plain Tp. v. Maurer*, 6th Dist. Wood No. WD-87-77, 1988 WL 101200, *3 (Sept. 30, 1988). *See also Bromley v. Hinton and Keith Dev.*, 9th Dist. Summit No. 20730, 2002 WL 432059, *2 (Mar. 20, 2002), quoting *Tradesmen Internatl. Inc. v. Kahoe*, 8th Dist. Cuyahoga No. 74420, 2000 WL 283081, *7 (Mar. 16, 2000). If, however, a party explicitly reserves the right to appeal a given issue, then a consent judgment will not deprive that party of his or her right to appeal that issue. *See Schmitt* at ¶ 4, quoting *In re P.P.*, 10th Dist. Franklin No. 13AP-140, 2013-Ohio-4988, ¶ 10. In the agreed judgment entry herein, Grandparents expressly reserved their right to appeal the trial court's denial of their motion to set aside. Accordingly, they did not waive that issue, and their appeal is properly

before us. *See Schmitt* at ¶ 4, quoting *P.P.* at ¶ 10. *See also Bromley* at \*2, quoting *Tradesmen* at \*7.

{¶14} This Court generally "review[s] a trial court's decision to deny a motion to set aside a magistrate's order for abuse of discretion." *Freeman v. Freeman*, 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶ 43. When the issue presented for appellate review presents purely a question of law, however, this Court employs a de novo standard of review. *Lucas v. Ford Motor Co.*, 9th Dist. Summit No. 28622, 2018-Ohio-3765, ¶ 16. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *Averback v. Montrose Ford, Inc.*, 9th Dist. Summit No. 28875, 2019-Ohio-373, ¶ 31, quoting *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶15} Depending on the circumstances, child custody disputes are governed by either R.C. Chapter 3109 or R.C. Chapter 2151. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 13. Chapter 3109 generally applies to custody disputes between parents. *In re Perales*, 52 Ohio St.2d 89, 96 (1977). When a nonresidential parent seeks to modify an allocation of parental rights and responsibilities, R.C. 3109.04(E)(1)(a) allows a trial court to modify the prior decree only if there has been a change in circumstances and the modification is necessary to serve the best interest of the child. *In re Brayden James*, 113 Ohio St.3d 430, 2007-Ohio-2335, paragraph one of the syllabus. The change of circumstances requirement is warranted because one parent is seeking to disrupt the custodial rights of the other parent with whom they "are on an equal footing before the law[.]" *Perales* at 96. The requirement also "promotes continuity and stability in the child's life" by guarding against the relitigation of previously determined issues. *Saal v. Saal*, 146 Ohio App.3d 579, 582 (9th Dist.2001).

{¶16} Chapter 2151 generally applies to custody disputes between a parent and a nonparent who has challenged the parent's suitability to raise his or her own child. *Id.*, citing R.C. 2151.23(A)(2). Custody may be awarded to a nonparent only if the natural parent has been deemed unsuitable. *Hockstok* at ¶ 18. The unsuitability requirement acts as a safeguard that limits the State's ability to encroach "upon the fundamental parental liberty interest of child custody." *Id.* at ¶ 17. Unsuitability may be found on several different grounds, including dependency, abuse, neglect, abandonment, a total inability to care for and support a child, or contractual forfeiture of the right to custody. *See Perales* at 97-98. Certain dispositional orders, e.g., those arising from a finding of dependency, abuse, or neglect, are "intended to be permanent in nature." R.C. 2151.42(B). Thus, before modifying or terminating those orders, a court must find that there has been a change in circumstances and the modification is necessary to serve the best interest of the child. *Id.* *See also In re A.P.*, 9th Dist. Lorain No. 20CA011638, 2021-Ohio-1229, ¶ 12 (contrasting the required showing for the modification of permanent dispositions under R.C. 2151.42(B) with the required showing for the modification of other dispositional orders under R.C. 2151.42(A)).

{¶17} In *In re A.M.*, this Court considered whether a mother who had contractually relinquished custody of her child to a nonparent by private agreement was required to establish a change of circumstances before the prior custody order could be modified. *In re A.M.*, 9th Dist. Summit No. 28285, 2017-Ohio-7690. We determined that the standard for modification set forth in R.C. 3109.04(E)(1)(a) did not apply because the dispute was "not between a residential and nonresidential parent, or parents subject to a shared parenting decree." *Id.* at ¶ 14. Likewise, though R.C. 2151 generally applies to custody disputes between a parent and a nonparent who has challenged a parent's suitability, the *In re A.M.* Court determined that the standard for modification

set forth in R.C. 2151.42(B) did not apply because the matter had arisen from "a private legal custody action, and the child was never adjudicated dependent, neglected, or abused." *Id.* This Court acknowledged that the mother's relinquishment of custody by private agreement was "adequate to support a finding of parental unsuitability." *Id.* at ¶ 16, citing *Hockstok*, 2002-Ohio-7208, at ¶ 17. Nevertheless, we cautioned that an unsuitability determination of that sort (i.e., one arrived at by private agreement) "'does not * * * permanently foreclose the right of either parent to regain custody[] because it is not a termination of all residual parental rights, privileges, and responsibilities[.]'" *Id.* at ¶ 16, quoting *In re G.S.*, 9th Dist. Summit No. 28050, 2016-Ohio-7471, ¶13, quoting *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 23. It was our conclusion that the change of circumstances requirement contained in both R.C. 3109.04(E)(1)(a) and R.C. 2151.42(B), if applied, would "place[] too high a burden on a parent whose child has not been adjudicated dependent, neglected, or abused; or who does not seek to disrupt a child from the custody of the other parent, where the two are on equal footing." *In re A.M.* at ¶ 20. *See also Hockstok* at ¶ 16 ("[T]he overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children."). We held that, in the instance of a private custody agreement, "[a]pplication of the best interest of the child standard to a modification of legal custody case initiated by a parent against a nonparent legal custodian * * * serves to protect the welfare of the child, while recognizing a parent's ongoing fundamental rights." *In re A.M.* at ¶ 20.

{¶18} The magistrate herein relied on *In re A.M.* to conclude that Mother was not required to establish a change of circumstances in seeking to regain custody of M.M. from Grandparents. Grandparents argue that the trial court erred when it refused to set aside the magistrate's decision because *In re A.M.* is incorrect as a matter of law. According to Grandparents, the holding in *In*

*re A.M.* is contrary to the plain language of R.C. 3109.04(E)(1)(a), the legislative intent underlying that statute, and "the body of case law decided by the Ohio Supreme Court on this same issue." Grandparents ask this Court to overturn *In re A.M.* and conclude, contrary to the rule of law set forth therein, that Mother was required to demonstrate a change of circumstances.

{¶19} Initially, we note that *In re A.M.* stemmed from a juvenile court proceeding, so we specifically analyzed the issue therein within the context of R.C. 2151.23. *In re A.M.* at ¶ 17-18. In doing so, we noted that, "'[o]nce the juvenile court has exercised jurisdiction over a child, the court has continuing jurisdiction to determine what is in the best interest of the child.'" *Id.* at ¶ 17, quoting *In re E.Z.H.*, 5th Dist. Holmes No. 12CA0015, 2013-Ohio-3494, ¶ 18. The case at hand began in the juvenile court but was transferred to the domestic relations court. Nevertheless, Grandparents have not addressed that procedural distinction on appeal or argued that it renders *In re A.M.* inapplicable. *See* App.R. 16(A)(7). Accordingly, we limit our review to the argument Grandparents have presented on appeal. *See id.*; *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶20} Upon review, Grandparents have not shown that the trial court erred by refusing to set aside the magistrate's decision. This Court has unequivocally held that, in the instance of a private custody agreement, "[a]pplication of the best interest of the child standard to a modification of legal custody case initiated by a parent against a nonparent legal custodian * * * serves to protect the welfare of the child, while recognizing a parent's ongoing fundamental rights." *In re A.M.* at ¶ 20. Grandparents have not pointed this Court to any authority that was not already in existence at the time that this Court issued its decision. *See* App.R. 16(A)(7). To the extent our decision conflicts with that authority, "we are compelled to follow our precedent." *Templeton v. Fred W. Albrecht Grocery Co.*, 9th Dist. Summit No. 27744, 2017-Ohio-282, ¶ 8, citing *Westfield Ins. Co.*

*v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849. Grandparents, should they seek further review of this issue, may file a motion to certify a conflict or pursue an appeal before the Ohio Supreme Court. *See In re A.M.* at ¶ 24 (Hensal, P.J. dissenting) (noting that "[t]here is an ongoing lack of clarity in the law regarding the applicable standard when a parent seeks to regain legal custody from a nonparent legal custodian"). However, based on the arguments presented herein, we cannot conclude that Grandparents have established error on the part of the trial court. As such, their sole assignment of error is overruled.

## III.

{¶21} Grandparents' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

                                              _____

                                              BETTY SUTTON
                                              FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JOSPEH A. KACYON and RACHEL L. SMICK, Attorneys at Law, for Appellants.

JOHN LYSENKO, Attorney at Law, for Appellee.