[Cite as *In re M.L.S.*, 2022-Ohio-2195.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

IN THE MATTER OF:

M.L.S., et al.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 HA 0010**

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division
of Harrison County, Ohio
Case Nos. 2021 4007, 2021 4008

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Sandra L. May-Kuziej*, *pro se*, 106 Stoney Ridge Lane, Cadiz, Ohio 43907, Petitioner-Appellant and

*Atty. Rachel A. Kopec,* 50 Public Square, Suite 1900, Cleveland, Ohio 44113 for Respondent-Appellee.

Dated:  June 24, 2022

---

**Robb, J.**

{¶1} Appellant-grandmother appeals the decision of the Harrison County Common Pleas Court, Juvenile Division, modifying custody of two children and naming Appellee-father as their residential parent, thereby discontinuing Appellant's legal custody. Although no assignment of error is set forth in the brief, Appellant is essentially arguing the trial court abused its discretion in changing custody from a non-parent to a parent. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} Appellant, the maternal grandmother, initially filed a custody complaint and received temporary custody of the children in Tuscarawas County C.P. No. 2018 CC 288. (2/15/19 Mag. Order). However, she failed to serve the children's mother by publication by the date ordered by the court and was warned this would result in dismissal of the complaint and vacation of prior interlocutory orders. (6/4/19 & 7/25/19 Mag. Orders). After the next hearing, where Appellant said she would be voluntarily dismissing her complaint, the trial court vacated the prior orders in the custody case and dismissed the case. (8/3/19 J.E.).

{¶3} A month after Appellant filed her complaint for custody, the paternal grandmother filed a complaint to establish visitation in Tuscarawas County C.P. No. 2018 VI 322. The initial hearing was held jointly with the custody case. After the magistrate entered a temporary order of visitation on alternating weekends, the grandmothers agreed to this schedule and the court memorialized the agreement. (6/3/19 J.E.). Soon after the Covid-19 pandemic began, the paternal grandmother filed a motion for contempt against Appellant for denying her four weekends in March and April 2020. Appellant then filed a motion to modify visitation to video and phone calls only.

{¶4} The juvenile court in Tuscarawas County denied Appellant's motion to eliminate live visitation; the prior order providing the paternal grandmother with alternating weekends explicitly remained in effect. Upon noting Appellant kept relocating, the court ordered each grandmother to drive one way. The court did not find Appellant in contempt as it found her Covid concerns reasonable at the time; however, she was ordered to provide make-up time to the paternal grandmother. Lastly, the court concluded no relevant person remained in Tuscarawas County and ordered the initiation of a request

for transfer to Harrison County (where Appellant relocated with the children).  (8/26/20 Mag. Dec.; 9/10/20 J.E.).

{¶5}  On October 28, 2020, the juvenile court in Tuscarawas County filed an order of transfer, directing a certified copy of the visitation case (2018 VI 322) to be transferred to Harrison County.  The transfer was initially declined but was later accepted on further transmission of the orders in the custody case (2018 CC 288).

{¶6}  On February 2, 2021, Appellant filed two complaints in Harrison County, requesting the allocation of parental rights and responsibilities in order to obtain legal custody of her grandchildren, resulting in Harrison County C.P. Nos. 2021 4007 (for the 12-year-old female child) and 2021 4008 (for the 11-year-old male child).  *See* R.C. 3109.04(D)(2) ("If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child").  The parents did not appear for the March 15, 2021 hearing, and the court observed they had been served.

{¶7}  Appellant testified she babysat the children when they were "little babies" and they gradually stayed with her for longer periods until the parents eventually did not return for the children.  She said she recently received a new power of attorney for the children from her daughter, who told her she would be in a Cleveland court on the same day as the custody hearing.  Appellant said the father was released from prison in November 2020.  (3/15/21 Tr. 3).  Due to Appellant's concerns with the pandemic, the children were homeschooled (by a company).  (3/15/21 Tr. 4).

{¶8}  On the same day as the March 15, 2021 hearing, the court entered a judgment granting Appellant legal custody.  The parents were granted parenting time "upon agreement of the parties" with an instruction to file a motion if an agreement could not be reached.

{¶9}  On August 6, 2021, the father filed a motion to reallocate parental rights and responsibilities, seeking custody of his children.  The first hearing proceeded on September 13, 2021, where the father and Appellant appeared pro se.  The father testified and presented the testimony of his father and his mother.

{¶10} The paternal grandfather testified he lived in Cleveland and saw the children when the father was permitted to see them. He said the last time he saw the children was when the father had them on the Fourth of July; prior to that, he saw them on Father's Day. He opined the children were not happy where they lived. (9/13/21 Tr. 8). The paternal grandmother agreed with this opinion, complained the children did not bring clothes when they arrived for visitation, and said the clothing they wore was in poor condition. She also noted the mother was not in a condition to have the children. (9/13/21 Tr. 10-11).

{¶11} According to the father's testimony: he took care of the children and their mother until the children were 5 and 6 years old; the mother left the children with Appellant after he was incarcerated; a year after the father's release on that case, he was convicted of robbery, having a weapon while under disability, and improper handling of a firearm in a motor vehicle; he suggested he was merely the passenger; this resulted in a three-year sentence; and he was released from that prison sentence in November 2020. (9/13/21 Tr. 13-15). During the latter sentence, he obtained his GED and participated in parenting and self-improvement classes in an attempt to better himself and be a better person for his children. On questioning by the court, Appellant testified to being compliant with his post-release control where he is drug-tested and substance-free. (9/13/21 Tr. 16).

{¶12} He testified he recently started working where the paternal grandmother worked and lived in her four-bedroom residence in Cleveland, which he described as comfortable and stable (and which was where the children previously visited the paternal grandmother under court order). The father said he could now afford and was looking for independent housing with three-bedrooms, but he was having difficulty finding a suitable place and learned the affordable supply was low (due to landlords being unable to evict during the pandemic). (9/13/21 Tr. 18-19, 22).

{¶13} The father expressed concern about a disturbing incident involving his daughter and Appellant's boyfriend. When asked on cross-examination if he knew she took the child to a doctor after the child told her about this allegation, the father pointed out Appellant did not communicate with him.

{¶14} The father also testified Appellant would not permit the children to answer his calls or texts, even though they have cell phones. When Appellant permitted the

children to speak to their father on her phone, she put the call on speakerphone and told them what to say. (9/13/21 Tr. 20, 26). The father confirmed Appellant was last permitted to visit with the children in July. He testified the children love seeing him but noted he did not wish to speak for them.

**{¶15}** Appellant presented a closing argument. She opined the father would not be ready for the children until he could provide his own address with utility bills in his own name, noting he still lived with his mother and claiming the children slept on a "cot on the floor." She alleged there were two witnesses who heard her grandson talk "about certain things." She also accused the father of failing to provide the child support agency with complete information. (9/13/21 Tr. 24-25).

**{¶16}** The father asked the court to interview the children. The court granted the request and continued the matter until in camera interviews could take place. *See* R.C. 3109.04(B)(1) (the court may interview the children regardless of any party's request and shall interview them upon a party's request).

**{¶17}** The court conducted in camera interviews on October 4, 2021. At the time of the interview, the female child was over 12.5 years old and in sixth grade, and the male child was over 11.5 years old. We reviewed the transcripts of the children's in camera interviews, which were detailed and enlightening. We will not relay the contents of the interviews in this opinion due to their confidential nature. *See In the Matter of T.M.M.*, 2017-Ohio-9219, 102 N.E.3d 558, ¶ 28 (7th Dist.) (though the court may reveal the child's choice of residential parent, the confidentiality of the in camera interview remains).

**{¶18}** After the in camera interviews, the court issued a temporary order specifying alternating weekend parenting time for the father pending the final ruling on the modification motion. (10/7/21 J.E.). The court did not immediately rule on the modification motion after the interviews because Appellant filed a motion for contempt on September 21, claiming the father interfered with a September 13, 2021 order. (No order was filed that day, and the only oral order at the September 13 hearing was for *Appellant* to allow the children to speak to the father on the phone three days a week at a set time.)

**{¶19}** At a November 1, 2021 hearing, the court began by addressing Appellant's contempt motion. Appellant testified and said she filed the contempt motion because the father answered in the negative at the September hearing when she asked if he showed

his son a gun. Appellant said her grandson made this disclosure at the beginning of August; she said after she filed the motion for contempt, her grandson cried when he got off the phone with Appellant, as he was afraid his father was going to get in trouble for pointing out someone else's gun. (11/1/21 Tr. 7, 9).

**{¶20}** The father's counsel (who was appointed only for the contempt portion of the hearing) objected to this testimony. He also argued her allegation did not constitute contempt of any order. The court agreed the contempt motion should be dismissed, as Appellant was not alleging the father violated an order of the pertinent court. (11/1/21 Tr. 6, 9-10).

**{¶21}** The court asked the father some questions to ascertain how the visits were going and whether there were any changes to his situation. The father said his girlfriend and her child were living with him. When the court asked how the two temporary visits went, it was noted the children missed the last visit as Appellant said they tested positive for Covid-19 one week before the visit. The father pointed out the children were already sick when they visited with him the week before the test. (11/1/21 Tr. 12-16).

**{¶22}** In addition, he said the children sometimes did not answer when he attempted to call on the assigned days. Appellant claimed the father failed to call eleven times while the father acknowledged he failed to call three times. The father pointed to Appellant's continued interference with his calls. For instance, she once got on the phone and yelled at the paternal grandmother, whom the father put on three-way calling. Appellant admitted this event, opining the phone time was not meant for the paternal grandmother and stating she thought the paternal grandmother focused too much on one child during the call. The court reminded her that she was not to intrude in the private calls and said the father had the right to add his relatives to his calls. (11/1/21 Tr. 17-19).

**{¶23}** In each child's case, the trial court issued a judgment on November 15, 2021. The court memorialized the denial of the motion for contempt stating, "the allegation was without proof." In the same entry, the court concluded there were changed circumstances and it was in each child's best interest to have father named residential parent, explaining the applicability of each factor in R.C. 3109.04(F)(1).[1]

---

[1] The court also said Cuyahoga County would now be the proper jurisdiction for future motions (such as a request for grandparent visitation).

APPELLATE RULE VIOLATIONS

{¶24} Appellant filed a timely notice of appeal in this court. She designated both juvenile court case numbers in the notice of appeal (rather than filing a separate notice of appeal in each case). Notably, a separate judgment was issued in each child's case referring only to the relevant child. Yet, Appellant attached only the judgment in 2021 4007 to her notice of appeal, and she did not attach a supplemental judgment entry to the docketing statement. Our docketing statement specifically says to attach all judgment entries resolving all claims. "A docketing statement is not fully completed unless a time-stamped copy of the judgment entry being appealed is attached." 7th Dist. Loc.R. 3.1(A)(1). Since Appellant did not attach the judgment in 2021 4008 to her notice of appeal, she should have attached it to the docketing statement. It seems Appellant did not realize the court issued a similar but independent judgment in each child's case. Nevertheless, we proceed to address both cases.

{¶25} Appellant's pro se brief incorrectly says it is filed in the "United States Court of Appeals for the Seventh Circuit" from the "United States District Court For the Harrison county Ohio juvenile courts." Still, her notice of appeal correctly named this court and the trial court. The brief also contains a "jurisdictional statement" citing federal rules and a "certificate of compliance" citing federal authorities dealing with an appendix. (Even in a federal court, her appendix would not have been compliant with the authority she cited.) We also note Appellant's table of contents has no corresponding page numbers to satisfy the common definition of a table of contents and to comply with App.R. 16(A)(1). There is no table of authorities as required by division (A)(2) of the rule. Moreover, Appellant failed to sign the certificate of service in violation of App.R. 13(B),(E). (She signed certificates of compliance with inapplicable federal rules about briefing and an appendix.) Although Appellant provided a pre-return receipt of certified mail to the father's address, her unsigned "proof of service" says she served his counsel. Nonetheless, an attorney filed a response brief for the father.

{¶26} In a prior judgment entry, this court accepted the January 4, 2021 filing as Appellant's brief notwithstanding various deficiencies. However, this did not mean we would be functioning as counsel for Appellant. *See Paparodis v. Snively*, 7th Dist. Columbiana No. 06-CO-5, 2007-Ohio-6910, ¶ 43 ("this court will not become appellate

counsel for pro se litigants"). Appellant still bears the risk of briefing deficiencies. *See State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 (10th Dist.2001) ("appellant elected to proceed pro se in bringing this action and in pursuing this appeal. It is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.").

**{¶27}** Appellant's brief fails to set forth an assignment of error as required by App.R. 16(A)(3). "According to App.R. 12(A)(2), the appellate court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *State v. Jones*, 7th Dist. Mahoning No. 06 MA 109, 2008-Ohio-1541, ¶ 61 (also stating we have no obligation to comb through the transcripts looking for evidentiary issues mentioned by an appellant without citation to the record). Although Appellant ordered three transcripts, her brief fails to cite any relevant pages within the transcripts. *See* App.R. 16(A)(6)-(7), (D). It is not our duty to "scour the record * * * where an appellant's brief does not specify the evidence or the page in the record." *Concrete Creations & Landscape Design LLC v. Wilkinson*, 7th Dist. Carroll No. 20 CA 0946, 2021-Ohio-2508, ¶ 52.

**{¶28}** Appellant's statement of the issues is a recitation of factual allegations; elsewhere, she summarily contests the application of the law to the facts, which we shall address to the extent an addressable argument is made. However, we point out Appellant's brief fails to cite law in the argument section (or elsewhere) that is relevant to the substance of this case as required by App.R. 16(A)(7).

**{¶29}** Additionally, the father requests we strike various items from Appellant's brief. For instance, Appellant makes allegations about post-judgment facts. However, a party cannot cite such occurrences to support an appeal. *Trotter v. Trotter*, 7th Dist. Columbiana No. 21 CO 0001, 2021-Ohio-4634, ¶ 25 (items outside the record can be viewed for the limited purpose of determining whether an appeal is moot). Even pre-judgment facts occurring outside the record, cannot be considered if there was not testimony presented which established or properly incorporated those facts. As the father

points out, various factual allegations were not present as part of the trial court record and cannot be utilized to support the appeal. We emphasize the following well-established appellate law principle: "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

**{¶30}** Therefore, a "voluntary statement" made by Appellant at the Harrison County Sheriff's Office (to complain about visitation in Cleveland) cannot be used as evidence against the father merely because she filed it when she filed her contempt motion. Her self-serving report would have been inadmissible if offered at the contempt hearing in any event. The allegation could have been excluded where Appellant did not present testimony on the matter. Furthermore, Appellant's thirty-page appendix contains documents de hors the record, which she believes support her claim. However, these documents were not admitted as evidence into the record below and cannot be utilized on appeal. *Id. See also Maloy v. Maloy*, 7th Dist. Columbiana No. 05 CO 8, 2006-Ohio-1053, ¶ 7 (a case with faulty briefing and improper reference to items de hors the record). Appellant's reply contains similar improper references to alleged past events that were not part of the record below and alleged post-judgment events that likewise are not within the province of this court's review.

## ARGUMENTS

**{¶31}** As mentioned in the prior section, there is no assignment of error specified in Appellant's brief. In her "jurisdictional statement" (which cites inapplicable federal rules and contains facts and arguments), Appellant initially claims the November 1, 2021 hearing was "based on verbal testimony only" and then states, "the judge did not take any of the evidence I had at the hearing there are several mistakes in matter of information."

**{¶32}** The reallocation of parental rights hearing was initially held on September 13, 2021. As the court explained at the conclusion of the hearing, it would make the custody decision after the children's in camera interviews were conducted. Appellant's contempt motion was then filed before the interviews took place. After the interviews, the court issued a judgment providing the father parenting time pendente lite and suggesting

the court would address the reallocation after hearing the contempt motion. At the November 1 hearing, the court explained the contempt motion would be addressed first.

**{¶33}** The court listened to the hearsay Appellant presented about what her grandson told her about a gun, partly in an attempt to understand her contempt motion. Pursuant to Evid.R. 802, the general rule is that hearsay is not admissible. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Although Appellant does not raise any exemption or exception, we note an admission by a party-opponent under Evid.R. 801(D)(2) is admissible as non-hearsay if testified to at trial by *the person who heard* the opponent speak; in other words, the other party cannot testify someone else told her the opponent made the statement. *Masucci v. Burnbrier*, 7th Dist. Mahoning No. 14 MA 78, 2015-Ohio-4102, ¶ 15

**{¶34}** Regardless, the court did not interrupt the presentation of her story about what her grandson told her. The court pointed out her allegations pre-existed the prior hearing (where she asked Appellant whether he showed the child a gun and he answered in the negative). She then said after that hearing, her grandson told her it was not the father's gun and expressed concerned his father would get in trouble (suggesting the father subsequently coached the child). The court pointed out it conducted in camera interviews with the children and implied Appellant was trying to get the father in trouble with his parole officer due to orders of other courts while noting this court was not the criminal court.[2]

**{¶35}** As set forth in our Statement of the Case above, Appellant's contempt motion said the father violated a court order. At the hearing on her motion, she acknowledged she was contesting Appellant's credibility at the September 13 hearing, rather than alleging violation of an order of the specific court hearing the contempt motion.

---

[2] We note Appellant's reply brief claims the father cannot possess a real firearm *or any item that looks like a real firearm*. The terms of his post-release control are not in the record. As for any allusion to the offense of having a weapon while under disability, we note a firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and only includes an inoperable firearm if it "can readily be rendered operable"). R.C. 2923.11(B)(1). The Supreme Court has indicated a BB or pellet gun does not fit the definition. *State v. Hanning*, 89 Ohio St.3d 86, 90, 728 N.E.2d 1059 (2000).

In any event, Appellant's brief makes no argument about the decision denying her contempt motion.

**{¶36}** We note Appellant's reply brief adds an argument claiming the trial court abused its discretion in dismissing her contempt motion. However, she fails to cite law or legal analysis supporting this contention. Additionally, the imposition of sanctions would not have benefited Appellant. "There is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 520 N.E.2d 1362 (1988), syllabus. Regardless, it is not permissible to present a new argument in a reply brief, as this would deprive the opposing side of the right to brief the issue in response. *State v. Jones*, 7th Dist. Mahoning No. 06 MA 109, 2008-Ohio-1541, ¶ 31. Accordingly, any new arguments in the reply brief (on this topic or others) are not proper.

**{¶37}** Returning to Appellant's vague argument about evidence she tried to present at the November 1, 2021 hearing, we note at one point Appellant began to say, "then also my daughter, she's in and out of treatment, she's often on drugs, had stated to me" something about the father and the paternal grandmother. (11/1/21 Tr. 6). The court precluded Appellant from continuing based on the hearsay nature of a statement by the children's mother. Appellant then mentioned speaking to two adult witnesses about something her grandson told them, at which point an objection was voiced by the father's counsel (who was appointed for the contempt hearing). These witnesses were not present at any hearing, and the court properly encouraged Appellant to move on, asking if she had anything further to present (to which she responded that she did not). Appellant does not raise an argument as to why she should have been able to continue in this vein; nor does she mention these rulings when she generally complains the court "did not take" her evidence at the hearing. And again, hearsay is properly excluded by a trial court. Evid.R. 801(C); 802.

**{¶38}** The other potential evidence Appellant mentioned at the cited November 1, 2021 hearing were Facebook photos. When she was explaining why she filed the contempt motion, she mentioned having posts by a family member posing with guns. She claimed this person lived in the paternal grandmother's residence without stating why she

believed he lived there at the time of the hearing. In addition, she did not mention the date of the posts. In any case, her brief does not mention Facebook posts.

{¶39} Instead, she mentions her collection of police reports related to the paternal grandmother's address. Yet, this evidence was not presented at the reallocation hearings (let alone supported by foundational or independent testimony). On the day of the March 15, 2021 hearing (where she asked for legal custody), she filed police reports to show six instances of the police being involved at the paternal grandmother's residence. However, there is no indication the court accepted those documents at the time of the legal custody hearing. Rather, the court focused on the fact that no parent appeared to contest Appellant's custody motion.

{¶40} We note four old incident reports from the paternal grandmother's residence from 2016-2018 were apparently presented to show her other son had issues. Appellant provided no evidence this individual (who is apparently the person posing with guns) lived at the residence in 2021. When the father testified and discussed where he lived, Appellant did not ask if his brother lived with him.

{¶41} Another of these reports spoke of an ambulance being called by the paternal grandmother in 2017 due to the father's dehydration while the children were at her house (the report says he admitted drug use days prior to the call). Appellant presented no testimony at any hearing about this allegation and made no arguments about any drug risk as related to the father. When Appellant cross-examined the father at the September 13, 2021 reallocation hearing, she did not ask him about the incident or past drug use. On questioning by the court, the father testified that he is compliant with his post-release control where he is drug-tested and substance-free. (9/13/21 Tr. 16). At the reallocation hearing, Appellant did not direct the court to the reports she filed on the day of the legal custody hearing, which was a distinct matter before the court. In sum, Appellant fails to demonstrate the trial court improperly refused to "take any of the evidence" she presented at the November 1, 2021 hearing.

{¶42} Factually, Appellant argues the father's testimony was not credible and makes accusations concerning gun possession and 2017 drug use. She says the children were raised by her or her mother (the children's great-grandmother), all with the consent of the children's mother. Appellant claims the trial court was misled (apparently

by the children) about her isolating the children from friends and family. She states the father is not ready for custody and expresses disapproval of the father living with his mother, his girlfriend, and her child. She emphasizes the children had separate bedrooms at her house and incorrectly claims this is required by law for children of this age. She protests the finding that another sibling lived in her house, without realizing this was likely a reference to the other child at issue in this case, as a separate judgment entry was issued for each child.

**{¶43}** Appellant also accuses the trial judge of being biased because he is a man, complaining there was no interview conducted by the county's "social services." However, this was not a case initiated by children services. We additionally note she did not request the appointment of a guardian ad litem under R.C. 3109.04(B)(2)(a) and does not raise an issue with such topic on appeal in any case.

**{¶44}** The father points to the children's unhappiness while living with Appellant and emphasizes the court's ability to rely on the confidential contents of their in camera interviews. The father notes Appellant cross-examined him as to whether he had a firearm and she chose to provide a closing argument at the original reallocation hearing instead of providing sworn testimony; the court warned an argument was not evidence. (9/13/21 Tr. 23-24). In any event, she said little during this opportunity at the September 13, 2021 hearing, and the trial court subsequently asked her two separate times if she had anything further to present. (9/13/21 Tr. 25, 29). Appellant did not mention drugs as related to the father at any hearing. Moreover, the father points out credibility determinations are the province of the fact-finder and the court specifically recognized he was compliant with his post-release control (including as to drug testing).

**{¶45}** "Credibility is a question for the trier of fact who occupies the best position from which to judge demeanor, voice inflection, gestures, eye movements, nervousness, and other signs of untruthfulness as a witness is testifying." *In re L.G.*, 7th Dist. Belmont No. 20 BE 0006, 2020-Ohio-6831, ¶ 48. These indicators do not transfer well onto the written page but are crucial in a custody case, where there may be much in a party's attitude and demeanor that will not be evident in the written record. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997).

{¶46} A trial court's custody modification decision is reviewed for an abuse of discretion. *Id.* at 416, 421 (and stating a modification decision will not be reversed as being against the weight of the evidence if it is supported by a substantial amount of credible and competent evidence). An abuse of discretion connotes more than an error in judgment but requires a finding that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶47} Pursuant to R.C. 2151.23(F)(1), "The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 * * *." The trial court quoted from R.C. 3109.04(E)(1)(a) as follows:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

This statute specifically allows the court to consider facts that arose since the original custody order and facts that were unknown to the court at that time.

{¶48} The father's brief cites this statutory provision and urges a change of circumstances occurred and modification was in the children's best interests. Appellant mentions change of circumstances and best interests but cites no law on the topic. As to the court's finding of changed circumstances for a custody modification, Appellant briefly claims the only changes were those caused by the father's release from prison. We will first address the changed circumstances in this case, and we will then explain an issue pending in the Supreme Court as to whether the test applies in cases such this.

{¶49} The change of circumstances referred to in R.C. 3109.04(E) "must be a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418. However, the change *need not be considered substantial.* *Id.* at 417-418

Case No. 21 HA 0010

(overturning an appellate court's reversal of a trial court's finding of changed circumstances). By finding a substantial change of circumstances, the trial court found the changed circumstances in this case satisfied an even higher standard than required to modify custody under R.C. 3109.04(E).

{¶50} Pursuant to *Davis*, we need only ascertain whether the court abused its discretion in finding there was a change of substance, one that was more than a slight change. *Id.* at 418. In *Davis*, the Court observed a custodian's reactions to a maturing child's changing visitation-related needs combined with hostility by the custodian toward the non-residential parent could constitute a sufficient change of circumstances. *Id.* at 420.

{¶51} Here, the court heard testimony from the father and the paternal grandfather on the limited parenting time provided to the father since Appellant was granted legal custody. Moreover, after Appellant was granted legal custody and prior to the father's motion, she prohibited the children from answering the father's calls or texts on their cell phones. When she allowed them to speak to their father on her phone, she kept it on speakerphone and told them what to say. Even after the court spoke to her at the first modification hearing about the children receiving private calls from their father pending the modification motion, she continued to listen and intrude. In addition, the father only received one weekend visit in the three months after filing his modification motion.

{¶52} Notably, the court conducted in camera interviews with the children, wherein the court learned various facts about the children's wishes and circumstances that were not known to the court when legal custody was granted. The court cited to these private discussions as support for finding a change of circumstances. As previously stated, we have reviewed the children's statements in reviewing the trial court's decision on this topic but will not review the specifics of the interviews outside of what the trial court disclosed on the record.

{¶53} The court alluded to the negative effects of the children's long-term isolation due to Appellant's continuing Covid-19 concerns into the fall of 2021. They were still being homeschooled, and it troubled the court that they had little interaction with people, participated in no activities, and were "limited with friends." Related to isolation, the court noted Appellant frequently moved the children to different counties. Furthermore, the

court suggested it was previously unaware the children had little contact with their mother (and may have been under the impression she was in regular contact, as Appellant said she spoke to her just before the legal custody hearing).

**{¶54}** The trial court's changed circumstances decision was "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree * * * *." R.C. 3109.04(E)(1)(a). The various changes in the children's circumstances together constituted "a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418. Consequently, the trial court did not abuse its discretion in finding a change of circumstances occurred.

**{¶55}** We note here that there is a current dispute over whether the change of circumstances test even applies where a parent seeks to change custody from a non-parent who received legal custody by a juvenile court in a private custody matter after voluntary relinquishment. A case pending in the Supreme Court may leave only the best interest test applicable to such a modification. *See* R.C. 3109.04(B),(F)(1).

**{¶56}** As background, in a prior case decided by the Supreme Court, a child was voluntarily relinquished to his grandparents but was also adjudicated abused and dependent based on the allegations of a public children's service agency. *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 17, 27. The Supreme Court found the change of circumstances test in R.C. 3109.04(E)(1)(a) was not unconstitutional on its face or as applied to a parent seeking to obtain custody from a non-parent. *Id.* at ¶ 17.

**{¶57}** The dissent argued this statutory provision was inapplicable to modification of a non-parent's custody. *Id.* at ¶ 31-32, 37 (three justices dissenting in two dissents). The majority recognized this concern but said R.C. 3109.04(E)(1)(a) was being analyzed because it was the statute applied below and declared unconstitutional by the appellate court. *Id.* at ¶ 24. The Court also pointed to R.C. 2151.23(F)(1), which states, "The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 * * *."

**{¶58}** The majority then emphasized the contents of a different applicable statute, R.C. 2151.42(B). *Id.* at ¶ 26. This statute states:

(A) At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child.

(B) An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

R.C. 2151.42(B), citing R.C. 2151.353(A)(3) (legal custody after adjudication of abuse, neglect, or dependency adjudication), also citing R.C. 2151.415(A)(3) (agency with temporary custody moves for legal custody to an interest individual); R.C. 2151.417 (review by court after issuing certain dispositional order).

{¶59} The change of circumstances test was thus applicable in *James* regardless of the application of R.C. 3109.04(E)(1)(a).

{¶60} Finding *James* distinguishable due to the adjudicatory proceedings in that case, the Ninth District concluded the change of circumstances test does not apply where a parent seeks to change custody from a non-parent who received legal custody by a juvenile court in a private custody matter after voluntary relinquishment. *In re A.M.*, 2017-Ohio-7690, 97 N.E.3d 1036, ¶ 11 (9th Dist.). They assumed the *James* Court relied on R.C. 2151.42(B) and would not have utilized R.C. 3109.04(E) if the change of circumstances test in the statute had not been declared unconstitutional by the appellate court. The Ninth District implicitly proceeded under the theory that the first sentence in division (B) limited the applicability of the second sentence in division (B) to modifications of legal custody under the listed statutes involving a dispositional order (possibly supported by division (A) as well). *See id.* at ¶ 14 (referring to the plain language).

Finding R.C. 3109.04(E)(1)(a) only applied where there was a residential parent with custody and finding the second sentence of R.C. 2151.42(B) only applied where there was a dispositional order under the cited statutes, the Ninth District concluded there was no statutory change of circumstances test applicable to the parent's action seeking to modify the non-parent's legal custody. *Id.* at ¶ 20.

**{¶61}** The Ninth District recently maintained this precedent and held only the best interest test must be satisfied before a parent can modify a non-parent's legal custody. *Morey v. Campbell*, 9th Dist. Summit No. 29742, 2021-Ohio-2670, ¶ 20. The Supreme Court accepted a certified conflict to answer the question of whether a change of circumstances under R.C. 3109.04 is required when a parent seeks to regain custody of a child from a non-parent custodian when the parent previously voluntarily relinquished custody (in a case not involving adjudication and disposition). *Morey v. Campbell*, 165 Ohio St.3d 1463, 2021-Ohio-4086.

**{¶62}** This district has noted in dicta where a non-parent was granted legal custody, a parent would have to show change of circumstances under R.C. 3109.04 to seek a modification of custody of the child. *In re D.D.*, 2017-Ohio-8392, 100 N.E.3d 141 (7th Dist.), fn.1, citing, *e.g.*, *James*, 113 Ohio St.3d 420. We also note the father does not argue the changed circumstances test was inapplicable in the case at bar.

**{¶63}** As this court already concluded above that the trial court did not abuse its discretion in finding there were changed circumstances in this case, the result of *Morey* would not benefit Appellant; if changed circumstances were not required, then Appellant's argument on a lack of changed circumstances would be irrelevant. As a result and because this case is calendar priority, there is no reason to wait for a decision in *Morey*. We proceed to the final argument.

**{¶64}** Appellant contends it was in the children's best interests to remain in her legal custody. The trial court cited R.C. 3109.04(F), reviewed the best interest factors therein, and included facts related to the applicable factors. The court considered the wishes of both parties. As for the children's mother, there was evidence she left the children with Appellant. *See* R.C. 3109.04(F)(1)(a) (parents' wishes). The court interviewed the children saying they loved both parties but "made [their] wishes very well known to the Court." *See* R.C. 3109.04(F)(1)(b) (the wishes and concerns of the child if

the court interviewed the child in chambers).  The court found the children were "very articulate and intelligent" and they "supported [their] reasonings and [their] opinions."  At the time, the ages of the children were 12 years plus 8 months and 11 years plus 7 months.

**{¶65}**  The children were full siblings who lived together with Appellant.  The court said they lacked a relationship with certain extended family while noting Appellant limited the children's ability to interact with people outside the household.  The court recognized Appellant's Covid-19 concerns but expressed concern with the combination of their limited interactions, the homeschooling, the lack of extracurricular activities, and the limitations on friendships.  The court heard testimony from the paternal grandmother, who previously exercised visitation with the children under prior court orders, and from the paternal grandfather, who also lives in Cleveland.  *See* R.C. 3109.04(F)(1)(c) (the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest).

**{¶66}**  The court had no issue with the father's girlfriend and her child living with him, and contrary to Appellant's suggestion, living with one's mother does not preclude readiness for custody.  The court believed there was room available for the children at the father's residence and noted the father was looking for his own housing in Cleveland where he would be near his family support system.  The court noted the children previously lived in that community as well (both before and after they began living with Appellant).  Contrary to the claims in Appellant's brief, there was no evidence the father's brother lived at the residence in 2021; she did not even mention him at the hearings.  The children's mother also lived in Cleveland.  (Although she did not involve herself in the proceeding, the court's prior legal custody order encouraged contact with the mother.)

**{¶67}**  The court recognized the children's integration into Appellant's household and her role as their caregiver over the years while it pointed out Appellant moved from county to county multiple times over the years.  There was no evidence of nearby family and no indication they were integrated into the community.  The children were not attending a local school but were being homeschooled (by a company).  *See* R.C. 3109.04(F)(1)(d) (the child's adjustment to home, school, and community).  The court

pointed out the father continued to test substance-free for his parole officer who monitored his post-release control. *See* R.C. 3109.04(F)(1)(e) (health of all involved).

**{¶68}** There were indications Appellant was not accommodating to the children's other family members and did not encourage communication or affection with those family members. Appellant's interference with the father's phone contact was discussed as was the sole visit between the father's August 26, 2021 motion and the November 1, 2021 hearing. *See* R.C. 3109.04(F)(1) ("consider all relevant factors including, but not limited to" those listed), (f) (most likely to honor and facilitate court-approved parenting time), (i) (continuous and willful denial of court-ordered parenting time or any other relevant factor). The court found there was no failure to pay court-ordered child support. *See* R.C. 3109.04(F)(1)(g). The court stated no evidence was presented to show either party had a conviction involving abuse or neglect of a child, and there was no evidence of a conviction of certain listed offenses. *See* R.C. 3109.04(F)(1)(h). Lastly, neither party planned to establish a residence outside of the state. *See* R.C. 3109.04(F)(1)(j).

**{¶69}** We do not substitute our judgment for that of the trial court in considering the weight to assign the evidence on the statutory best interest factors when modifying custody. *Davis*, 77 Ohio St.3d at 417. The judges on an appellate panel cannot grant custody to an appellant merely because they would have decided a custody motion differently. "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * *." *Id.* at 418. The trial court conducted live in camera interviews, and we reviewed the transcripts of those interviews. The trial heard and saw the parties as they spoke and judged their credibility, sincerity, and attitude, which is the trial court's primary function and prerogative. *Id.* at 418-419. We cannot say the trial court abused its discretion in naming the father residential parent.

**{¶70}** For the foregoing reasons, the trial court's judgment is affirmed.

Waite, J., concurs.

D'Apolito, J., concurs.

Case No. 21 HA 0010

---

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Juvenile Division of the Court of Common Pleas of Harrison County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**